MACK C. STEPHENS, Plaintiff and Counterdefendant, *v.* THOMAS McBRIDE, Defendant and Counterplaintiff and Third-Party Plaintiff-Appellant.—(THE CITY OF MAYWOOD, Third-Party Defendant-Appellee.)

First District (1st Division)    No. 81-1406

Opinion filed April 12, 1982.

Clausen, Miller, Gorman, Caffrey & Witous, P. C., of Chicago (James T. Ferrini, of counsel), for appellant.

Ancel, Glink, Diamond, Murphy & Cope, P. C., of Chicago (John B. Murphy, of counsel), for appellee.

JUSTICE O'CONNOR delivered the opinion of the court:

This is a third-party action for contribution. Thomas McBride, the defendant in a personal injury and property damage suit based on negligence brought against him by Mack C. Stephens, filed a third-party complaint for contribution against the City of Maywood. The latter moved successfully for summary judgment on the ground that no notice had been served on it within one year of the accident, as required by sections 8—101, 8—102 and 8—103 of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (Ill. Rev. Stat. 1979, ch. 85, pars. 8—101, 8—102, 8—103). Thomas McBride appeals. He contends that the notice provision of the Tort Immunity Act does not apply to a claim for contribution, but that if it does timely notice was served.

The underlying factual background of this suit is an intersection collision between Stephens' motorcycle and McBride's automobile at Legion and Fourth Streets in Maywood, Illinois, on May 18, 1978. On October 5, 1978, McBride sent a letter to the City describing the accident and stating that shrubbery on one corner of the intersection constituted an obstruction to vision of motorists and that this hazardous condition was

the responsibility of the City and contributed to the cause of the accident. It also stated that if suit was filed against McBride, he would join the City as a party based on the supreme court decision in the *Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1, 374 N.E.2d 437. On December 10, 1979, Stephens filed suit against McBride alone. On April 1, 1980, the latter filed an answer which was a counterclaim against Stephens and a third-party complaint against the City. In the third-party complaint, McBride asked contribution from the City, alleging that the accident occurred upon public streets maintained and controlled by the City, which had negligently violated its own ordinances concerning the height and location of shrubbery near intersections, thus contributing to Stephens' injuries.

The pertinent parts of the Tort Immunity Act provide (Ill. Rev. Stat. 1979, ch. 85, pars. 8—101, 8—102 and 8—103):

"§8—101. No civil action may be commenced in any court against a local entity for any injury unless it is commenced within 2 years from the date that the injury was received or the cause of action accrued."

"§8—102. Within 1 year from the date that the injury or cause of action, referred to in Sections 8—101, 8—102 and 8—103, was received or accrued, any person who is about to commence any civil action for damages on account of such injury against a local public entity * * * must serve, either by personal service or by registered or certified mail, return receipt requested, a written notice on the Secretary or Clerk, as the case may be, for the entity against whom * * * the action is contemplated a written statement * * * giving in substance [certain specified information]."

"§8—103. If the notice under Section 8—102 is not served as provided therein, any such civil action commenced against a local public entity * * * shall be dismissed and the person to whom such cause of injury accrued shall be forever barred from further suing."

McBride contends that the Tort Immunity Act does not apply because it applies only to tort actions and contribution is not such an action. We find it unnecessary to consider whether contribution is or is not a tort action because, even if contribution were considered in this case to be a tort action because of the nature of the action between Stephens and McBride, the public policy underlying the right of contribution outweighs the public policy underlying the notice provision of the Tort Immunity Act.

The opinion of the supreme court in *Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1, 374 N.E.2d 437, makes clear that the public policy behind the adoption of contribution

was the justice of apportioning damages for tort injuries as equally as possible among those who were liable. The court said (70 Ill. 2d 1, 13):

> "We are of the opinion that there is no valid reason for the continued existence of the no-contribution rule and many compelling arguments against it. We agree with Dean Prosser that '[t]here is obvious lack of sense and justice in a rule which permits the entire burden of a loss, for which two defendants were equally, unintentionally responsible, to be shouldered onto one alone, according to the accident of a successful levy of execution, the existence of liability insurance, the plaintiff's whim or spite, or his collusion with the other wrongdoer, while the latter goes scot free.' Prosser, Torts sec. 50, at 307 (4th ed. 1971)."

The purpose of the notice requirement of the Tort Immunity Act has been succinctly stated in *Helle v. Brush* (1973), 53 Ill. 2d 405, 407-08, 292 N.E.2d 372:

> "The Tort Immunity Act, in part, is the legislative result of our decision in *Molitor v. Kaneland Community Unit Dist.* (1959), 18 Ill. 2d 11. In general, it adopts the *Molitor* rule of liability of public entities but specifies certain exceptions and limitations to actions to enforce liability thereunder. The purposes of the statute requiring notice have been said to be: to permit early investigation and prompt settlement of meritorious claims; to avoid the expenses and costs of suit where settlement can be achieved; and to permit the public entity to determine its budget in advance, for taxing purposes. (*Reynolds v. City of Tuscola* (1971), 48 Ill. 2d 339, 342; *King v. Johnson* (1970), 47 Ill. 2d 247, 250-51; 56 Am. Jur. 2d, Municipal Corporations, sec. 686.) The statement of these purposes elucidates the pragmatic reasons which underlie the notice and which are proper for our consideration in construing the statute. *People ex rel. Cason v. Ring* (1968), 41 Ill. 2d 305, 310."

Nine States which have considered the question have held that a tortfeasor's right to contribution is not barred by reason of the notice requirements of tort immunity acts. Those States are California, Delaware, Hawaii, Iowa, Kentucky, Maryland, New York, Tennessee and Wisconsin. *People ex rel. Department of Transportation v. Superior Court* (1980), 26 Cal. 3d 744, 608 P.2d 673, 163 Cal. Rptr. 585; *Royal Car Wash Co. v. Mayor of Wilmington* (Del. 1968), 240 A.2d 144; *Albert v. Dietz* (D.C. Hawaii 1968), 283 F. Supp. 854; *Olsen v. Jones* (Iowa 1973), 209 N.W.2d 64; *Roehrig v. City of Louisville* (Ky. 1970), 454 S.W.2d 703; *Cotham v. Board of County Commissioners* (1971), 260 Md. 556, 273 A.2d 115; *Zillman v. Meadowbrook Hospital Co.* (1973), 73 Misc. 2d 726, 342 N.Y.S.2d 302, *rev'd on other grounds* (1974), 45 App. Div. 2d 267, 358 N.Y.S.2d 466; *Security Fire Protection Co. v. City of Ripley* (Tenn. 1980),

608 S.W.2d 874; *Ainsworth v. Berg* (1948), 253 Wis..438, 34 N.W.2d 790, *mandate vacated on other grounds* (1949), 35 N.W.2d 911; *Minneapolis, St. Paul & Sault Ste. Marie R.R. Co. v. City of Fond du Lac* (7th Cir. 1961), 297 F.2d 583; *Geiger v. Calumet County* (1962), 18 Wis. 2d 151, 118 N.W.2d 197; Annot., 93 A.L.R.2d 1385 (1964).

Colorado and Minnesota have held to the contrary. *Brady v. City of Denver* (1973), 181 Colo. 218, 508 P.2d 1254; *American Automobile Insurance Co. v. City of Minneapolis* (1961), 259 Minn. 294, 107 N.W.2d 320.

■■ The Appellate Court for the Second District has but recently considered the public policy underlying contribution *vis-á-vis* that underlying interspousal immunity. (*Wirth v. City of Highland Park* (1981), 102 Ill. App. 3d 1074, 430 N.E.2d 236, *appeal denied* (1982), ___ Ill. 2d ___.) It found that the former should prevail. With reference to the status of the law of contribution in Illinois, the court said (102 Ill. App. 3d 1074, 1080-82):

> "The recent trend in Illinois has been to curtail common law tort doctrines to allow contribution among joint tortfeasors (Ill. Rev. Stat. 1979, ch. 70, par. 302(a); *Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1, 374 N.E.2d 437, *modified* (1978), 70 Ill. 2d 16) and comparative negligence (*Alvis v. Ribar* (1981), 85 Ill. 2d 1, 421 N.E.2d 886). One commentator has noted that perhaps the Illinois contribution statute (Ill. Rev. Stat. 1979, ch. 70, par. 302(a)) abolishes the traditional notion of common law tort immunities. (Comment, *Comparative Contribution: The Legislative Enactment of the* Skinner *Doctrine*, 14 J. Mar. L. Rev. 173, 194 (1980).) In a parallel situation the *Skinner* decision balanced policy considerations which immunize an employer from direct suit by an employee with policy considerations which make people who cause an injury responsible for their degree of culpability and allowed contribution from an employer. (70 Ill. 2d 1, 15-16, 374 N.E.2d 437.) In *Alvis v. Ribar* (1981), 85 Ill. 2d 1, 421 N.E.2d 886, the Illinois Supreme Court abolished the long used rule of contributory negligence in favor of 'pure' comparative negligence on the basis that the 'pure' form of comparative negligence 'is the only system which truly apportions damages according to the relative fault of the parties and, thus, achieves total justice.' (85 Ill. 2d 1, 27, 421 N.E.2d 886.) Both the Illinois Supreme Court in deciding the *Skinner* and *Alvis* cases and the legislature in enacting a statute on contribution (Ill. Rev. Stat. 1979, ch. 70, par. 302(a)) have found a pressing need to act against the harsh results inherent in both contributory negligence and in a no-contribution rule. For us to allow a loophole to contribution would mar our promising

new contribution and comparative negligence schemes as well as detract from an equitable development of these doctrines.

\* \* \* Comment on the history for the Illinois [Contribution] act indicates that any common law or statutory immunity should not apply:

> ' "It is the further intent of the committee that the right of contribution thus created be recognized as founded upon the doctrine of unjust enrichment. The right is a separate right of restitution. It is not a derivative right and thus *is not barred by any common law or statutory immunity which would preclude the prime claimant from pursuing an action directly against the party from whom contribution is sought."* ' (Emphasis added.) (Comment, *Comparative Contribution: The Legislative Enactment of the* Skinner *Doctrine,* 14 J. Mar. L. Rev. 173, 193 (1980) quoting legislative history behind Senate Bill 308, published by the Chicago Bar Association's Civil Practice Committee, at 2.)

\* \* \*.

> In view of the trend in other jurisdictions and the views set out by the Illinois Supreme Court in *Skinner* [citation] and *Alvis* [citation], for an equitable distribution of fault in negligence suits, we believe equity requires that contribution be allowed even where our statute provides for interspousal tort immunity which would bar a direct suit by the plaintiff. Such a rule is consistent with the desirable policy of the equitable distribution of loss among those parties responsible."

We agree with the court and hold that the public policy underlying the right of contribution outweighs that underlying the notice provision of the Tort Immunity Act. Failure to comply with the notice provisions of that Act provides a bar only in direct suits against a local entity and even in such suits today those provisions are not as strictly construed as they were originally.

■■ Substantial compliance with the notice provision is sufficient. (*King v. Johnson* (1970), 47 Ill. 2d 247, 265 N.E.2d 874; *Greene v. City of Chicago* (1976), 48 Ill. App. 3d 502, 363 N.E.2d 378, *aff'd* (1978), 73 Ill. 2d 100, 382 N.E.2d 1205.) The notice requirements are to be liberally construed. (*Stinnette v. City of Rockford* (1978), 61 Ill. App. 3d 908, 378 N.E.2d 630.) A defect in the notice of claim under the Tort Immunity Act is cured by filing the complaint before the expiration of the time to file the notice. (*Saragusa v. City of Chicago* (1976), 63 Ill. 2d 288, 348 N.E.2d 176.) The local public entity has the power to waive the notice requirement. (*Housewright v. City of LaHarpe* (1972), 51 Ill. 2d 357, 282 N.E.2d 437.) The notice provision is not a condition precedent to the right to bring suit,

but a limitation provision which can be waived. *Helle v. Brush* (1973), 53 Ill. 2d 405, 292 N.E.2d 372.

■■ In *Wood Acceptance Co. v. King* (1974), 18 Ill. App. 3d 149, 151, 309 N.E.2d 403, this court said:

> "In *Helle v. Brush*, 53 Ill. 2d 405, 292 N.E.2d 372, the court cautions against a boilerplate application of the rationale that demands strict compliance with all prerequisites of the statutory created actions before permitting a person to assert any rights thereunder. The issue there was whether defendant's timely counterclaim, arising out of the same occurrence as the underlying suit, could be filed against a public entity under the provisions of the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1967, ch. 85, par. 8—102) where there had been a failure to comply with the notice requirements of the Act. The court found that the purpose of section 17 of the Limitations Act to be one of fundamental fairness as well as a desire to grant defendant his complete day in court and that such purposes when balanced against the rationale for the notice section of the Tort Immunity Act far outweighed the latter thereby furnishing compelling logic for permitting defendant to assert his counterclaim. The decision explicitly rejects as broad and imprecise the classification of section 8—102 as a condition precedent to the assertion of the right."

So, too, strict compliance with the notice provisions is not a condition precedent to the assertion of the right to contribution. Particularly is that true here, where the underlying tort action for personal injury was filed solely against an individual and within the general two-year statute of limitations but after the one-year notice provision of the Tort Immunity Act. The failure, or refusal, of an injured party to sue a local entity and to give the notice required under that act should not bar the sued defendant's right to seek contribution from a negligent local entity.

*Public Litho Service, Inc. v. City of Chicago* (1972), 8 Ill. App. 3d 315, 290 N.E.2d 677, relied on by the City, is inapplicable. It is a subrogation case decided before the supreme court's adoption of the doctrine of contribution.

If the notice provision did apply, the letter of October 5, 1978, which was sent to the City within five months of the accident, could be construed as constituting substantial compliance with its requirements, even though it did not explicitly refer to an injury nor state the name and address of any attending physician or of any treating hospital. As to the latter items, McBride undoubtedly had no knowledge concerning them at the time the letter was sent.

In addition, the third-party complaint, which admittedly is to be

construed as notice under *Saragusa v. City of Chicago* (1976), 63 Ill. 2d 288, 348 N.E.2d 176, was filed and served within one year "from the date that the injury or *cause of action* \* \* \* was received or *accrued*." (Ill. Rev. Stat. 1979, ch. 85, par. 8—102.) Under the Contribution Act the right of contribution accrues upon the tortfeasor's payment of "more than his pro rata share." (Ill. Rev. Stat. 1979, ch. 70, par. 302(b).) McBride's cause of action has not yet accrued, but the cause of action can be asserted "before \* \* \* payment, by counterclaim or by third-party complaint in a pending action." Ill. Rev. Stat. 1979, ch. 70, par. 305.

The summary judgment in favor of the City of Maywood is reversed and the cause remanded.

Reversed and remanded.

CAMPBELL, P. J., and GOLDBERG, J., concur.