(No. 56665.—

MACK C. STEPHENS v. THOMAS McBRIDE (Thomas McBride, Appellee, v. The City of Maywood, Appellant).

*Opinion filed October 4, 1983.*

Ancel, Glink, Diamond, Murphy & Cope, P.C., of Chicago (John B. Murphey and Ronald S. Cope, of counsel), for appellant.

Clausen, Miller, Gorman, Caffrey & Witous, P.C., of

Chicago (James T. Ferrini, of counsel), for appellee.

Richard M. Daley, State's Attorney, of Chicago (Jane Clark Casey, Deputy State's Attorney, and Myra J. Brown, Assistant State's Attorney, both of Chicago, of counsel), for *amicus curiae* County of Cook.

JUSTICE GOLDENHERSH delivered the opinion of the court:

Mack C. Stephens, plaintiff, filed an action in the circuit court of Cook County against defendant, Thomas McBride, alleging that he sustained injuries as the result of defendant's negligent operation of his motor vehicle. Defendant filed a third-party complaint for contribution against the third-party defendant, the city of Maywood. (The third-party defendant states that it is a village, not a city, and therefore will be referred to as "the village.") The circuit court allowed the village's motion for summary judgment, the appellate court reversed (105 Ill. App. 3d 880), and we allowed the village's petition for leave to appeal (87 Ill. 2d R. 315).

On May 18, 1978, plaintiff's motorcycle and defendant's automobile collided at the intersection of Legion Street and Fourth Avenue in Maywood. Defendant's insurer sent a letter, dated October 3, 1978, to Maywood's village clerk. The letter, which bears the stamp "Received Oct. 4, 1978 — Village Clerk," states:

"A vehicular accident occurred at the intersection of Fourth Avenue and Legion Street, Maywood, on or about May 5, 1978. An automobile heading in a southerly direction on Fourth Avenue was struck by a motorcycle heading in an easterly direction on Legion Street. The automobile was operated by Mr. T. G. McBride of Maywood and the motorcycle was operated by Mack C. Stephens of Broadview.

Inspection of the accident scene reveals that shrubbery located on the northwest corner of the intersection is an obvious obstruction to the vision of motorists. In-

spection reveals that the hazardous condition which has been maintained by the village at the corner, has been in existence for a considerable length of time.

The visual obstruction which exists at the described corner contributed in part to the cause of the accident described. Therefore, should suit be filed against our insured, as a result of the captioned accident, we would be obliged to join the Village of Maywood in any action based on the decision of Skinner vs. Reed - Prentice Division Package Machinery Co.

Please acknowledge."

Plaintiff's complaint, filed on December 10, 1979, alleged, *inter alia*, that defendant's automobile had struck plaintiff's motorcycle in an intersection and that defendant was traveling too fast, failed to observe plaintiff's motorcycle, and failed to stop for a stop sign controlling defendant's lane of traffic.

Defendant filed a "counterclaim and third-party complaint." Count II was directed against the village of Maywood and alleged that the village was liable as a joint tortfeasor because it violated its own ordinances by permitting bushes and shrubs within 12 feet of an intersection to exceed 3 feet in height. The village moved for summary judgment against both plaintiff and defendant. Its motion states that although plaintiff's complaint in its caption named the village as a defendant, it contained neither allegations of negligence on its part nor a prayer for any relief against it. It also stated that since neither the complaint nor the third-party complaint was filed within one year from the date that plaintiff sustained the injuries, neither party could maintain an action against the village because sections 8—102 and 8—103 of the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1979, ch. 85, pars. 8—102, 8—103) precluded such a suit. The circuit court allowed the village's motion for summary judgment against defendant and entered a finding that there was no just reason to delay enforcement or appeal of the order (87 Ill. 2d R. 304(a)).

The pertinent sections of the Tort Immunity Act (Ill. Rev. Stat. 1979, ch. 85, pars. 8—101 through 8—103) provide:

"Sec. 8—101. No civil action may be commenced in any court against a local entity for any injury unless it is commenced within 2 years from the date that the injury was received or the cause of action accrued."

"Sec. 8—102. Within 1 year from the date that the injury or cause of action, referred to in Sections 8—101, 8—102 and 8—103, was received or accrued, any person who is about to commence any civil action for damages on account of such injury against a local public entity, or against any of its employees whose act or omission committed while acting in the scope of his employment as such employee caused the injury, must serve, either by personal service or by registered or certified mail, return receipt requested, a written notice on the Secretary or Clerk, as the case may be, for the entity against whom or against whose employee the action is contemplated a written statement, signed by himself, his agent or attorney, giving in substance the following information: the name of the person to whom the cause of action has accrued, the name and residence of the person injured, the date and about the hour of the accident, the place or location where the accident occurred, the general nature of the accident, the name and address of the attending physician, if any, and the name and address of the treating hospital or hospitals, if any."

"Sec. 8—103. If the notice under Section 8—102 is not served as provided therein, any such civil action commenced against a local public entity, or against any of its employees whose act or omission committed while acting in the scope of his employment as such employee caused the injury, shall be dismissed and the person to whom such cause of injury accrued shall be forever barred from further suing."

The appellate court found it unnecessary to address the question whether an action for contribution could be considered a "tort" action because it believed that even if it were so considered "the public policy underlying the right

of contribution outweighs the public policy underlying the notice provision of the Tort Immunity Act." (105 Ill. App. 3d 880, 882.) The appellate court also held that the notice sent to the village by defendant's insurer substantially complied with the requirements of the Tort Immunity Act. Additionally, the appellate court noted that section 8—102 requires that notice must be served within one year "from the date that the injury or cause of action *** was received or accrued ***," and that since under section 2(b) of the Contribution Among Joint Tortfeasors Act (Ill. Rev. Stat. 1979, ch. 70, par. 302(b)) a cause of action for contribution does not accrue until a tortfeasor pays more than his *pro rata* share, defendant's filing of his action constituted timely notice under the Tort Immunity Act.

The village asserts that the central issue in this case involves the construction of two statutes whose purposes conflict when applied to these facts. The village first argues that because both the Contribution Act and the Tort Immunity Act appear to apply in this case, the policies of each act should be examined and balanced against each other. The village also argues that the Contribution Act, by its terms, precludes defendant from asserting a contribution claim. If the village is correct on its second assertion, there would be no need to balance the policies underlying each statute. Because of this, we examine the village's second assertion first.

The village points out that it is undisputed that plaintiff was precluded from bringing an action against it. Section 2(a) of the Contribution Act provides for contribution where "2 or more persons are subject to liability in tort arising out of the same injury ***." (Ill. Rev. Stat. 1979, ch. 70, par. 302(a).) Citing *American Automobile Insurance Co. v. City of Minneapolis* (1961), 259 Minn. 294, 107 N.W.2d 320, the village argues that it cannot be liable for contribution because plaintiff's failure to give the village notice of his injuries precludes its being "subject to liabil-

ity." This argument has been rejected by the vast majority of courts which have considered the question. The rationale of these decisions is that "liability" is determined at the time of the injury out of which the right to contribution arises, and not at the time the action for contribution is brought (see, *e.g., New Amsterdam Casualty Co. v. Holmes* (1st Cir. 1970), 435 F.2d 1232, 1234; *Keleket X-Ray Corp. v. United States* (D.C. Cir. 1960), 275 F.2d 167, 169; *Ainsworth v. Berg* (1948), 253 Wis. 438, 444, 34 N.W.2d 790, 792; *Zarrella v. Miller* (1966), 100 R.I. 545, 548, 217 A.2d 673, 675; *Security Fire Protection Co. v. City of Ripley* (Tenn. App. 1980), 608 S.W.2d 874, 878; *Markey v. Skog* (1974), 129 N.J. Super. 192, 204, 322 A.2d 513, 519-20) or "that a tort defendant's indemnity action against a governmental entity is separate and distinct from the injured plaintiff's action against the governmental entity and is not barred by failure to file a timely claim measured from the time of the accident." *(People ex rel. Department of Transportation v. Superior Court* (1980), 26 Cal. 3d 744, 754, 608 P.2d 673, 679, 163 Cal. Rptr. 585, 591; see cases collected therein (26 Cal. 3d 744, 752-55, 608 P.2d 673, 678-80, 163 Cal. Rptr. 585, 590-92); see also Horan, *Contribution In Illinois: Skinner v. Reed-Prentice and Senate Bill 308,* 61 Chi. B. Rec. 331, 332-33 (1980).) We agree with both these rationales and reject the contention that defendant is precluded from seeking contribution under the Contribution Act solely because, at the time he filed his third-party complaint for contribution, plaintiff was precluded from recovering from the village.

The village contends that the appellate court's decision abrogates the protection granted by the notice requirements contained in sections 8—101 through 8—103 in any case in which there is a co-tortfeasor with the municipal tortfeasor. The village argues that while the appellate court purportedly balanced the competing public policies underlying the Contribution Act and the Tort Immunity Act, it

failed to give adequate weight to the policies underlying the latter act.

Defendant contends that the notice provisions contained in the Tort Immunity Act apply only to the injured party and not to the party seeking indemnity or contribution. Defendant points out that the notice provisions of the Tort Immunity Act require information such as the extent of the injuries and the treating hospitals (see Ill. Rev. Stat. 1979, ch. 85, par. 8—102) that ordinarily would be known only to the injured party, and not to a codefendant of the municipality. Defendant argues that it would be inequitable to permit a plaintiff's failure to give notice to a governmental entity covered by the Tort Immunity Act to bar a defendant's right to contribution against such a governmental entity. Alternatively, defendant contends that the notice given on October 3, 1978, sufficiently complied with the requirements of section 8—102, and that, in any event, the third-party complaint, filed within four months of the filing of the original suit, constituted timely notice since defendant's cause of action for contribution will not accrue until he pays a disproportionate share of his liability to the injured party.

We are of the opinion that the Tort Immunity Act's notice provisions do not apply to an action for contribution. The General Assembly enacted the Local Governmental and Governmental Employees Tort Immunity Act as its second legislative response to this court's decision in *Molitor v. Kaneland Community Unit District No. 302* (1959), 18 Ill. 2d 11. (See generally Van Alstyne, *Governmental Tort Liability: A Decade of Change,* 1966 U. Ill. L.F. 919, 930-34; Baum, *Tort Liability of Local Governments and Their Employees: An Introduction to the Illinois Immunity Act,* 1966 U. Ill. L.F. 981.) The doctrine of contribution was recognized in this jurisdiction in 1977 when this court decided *Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1. The rule adopted in

*Skinner* was codified and clarified by the General Assembly in 1979 in the Contribution Among Joint Tortfeasors Act (Ill. Rev. Stat. 1979, ch. 70, par. 301 *et seq.*). The Governmental Tort Immunity Act was enacted prior to our decision in *Skinner* and did not purport to deal with contribution actions.

The Tort Immunity Act provides that notice be given by "any person who is about to commence any civil action for damages on account of [an] injury ***." As noted before, much of the information required by section 8—102 would ordinarily be available only to the injured party. Moreover, to require that a defendant who brings a contribution action against a governmental entity give notice containing the information required by the statute within one year after its cause of action for contribution accrues would be of questionable value. Obviously, one of the purposes of the notice provision is to allow the governmental entity the opportunity to investigate the scene of the occurrence to determine if it was, in fact, liable and to preserve any pertinent evidence in order to defend against a potential claim. This purpose would obviously not be furthered by requiring a co-tortfeasor to give notice after its cause of action for contribution accrues, since this oftentimes could be years after the accident has occurred.

If, as the village asserts, the policies underlying the two acts must be compared to determine which policies should prevail (see Horan, *Contribution in Illinois: Skinner v. Reed-Prentice and Senate Bill 308,* 61 Chi. B. Rec. 331, 332 (1980); Note, *Contribution Among Joint Tortfeasors When One Tortfeasor Enjoys a Special Defense Against Action By the Injured Party,* 52 Cornell L.Q. 407, 413 (1967); Note, *Contribution Among Negligent Tortfeasors: The New Rule and Beyond,* 55 Neb. L. Rev. 383, 396 (1976)) we agree with the appellate court that the policies underlying the Contribution Act should prevail.

In *Skinner v. Reed-Prentice Division Package Machin-*

*ery Co.* (1977), 70 Ill. 2d 1, 13, this court noted the central policy underlying the right to contribution:

> "We agree with Dean Prosser that '[t]here is obvious lack of sense and justice in a rule which permits the entire burden of a loss, for which two defendants were equally, unintentionally responsible, to be shouldered onto one alone, according to the accident of a successful levy of execution, the existence of liability insurance, the plaintiff's whim or spite, or his collusion with the other wrongdoer, while the latter goes scot free.' Prosser, Torts sec. 50, at 307 (4th ed. 1971)."

This same "obvious lack of sense and justice" would arise if a codefendant were precluded from seeking contribution from a governmental entity because of the plaintiff's failure to give timely notice pursuant to section 8—102. Accord, *People ex rel. Department of Transportation v. Superior Court* (1980), 26 Cal. 3d 744, 760-61, 608 P.2d 673, 684, 163 Cal. Rptr. 585, 596; *Olsen v. Jones* (Iowa 1973), 209 N.W.2d 64, 65; *Royal Car Wash Co. v. Mayor & Council* (Del. 1968), 240 A.2d 144, 145-46; *Keleket X-Ray Corp. v. United States* (D.C. Cir. 1960), 275 F.2d 167, 169.

On the other hand, the loss of protection to the village if the notice provisions are held inapplicable is insignificant when compared to defendant's total loss of his right to contribution if plaintiff's failure to give timely notice were held to bar defendant's claim.

It is possible that, as the result of our holding that notice was not required, governmental entities will lose some of the protection afforded by the Tort Immunity Act. We are of the opinion, however, that the lost protection will not be as serious or extensive as envisaged by the village or by *amicus*. There is merit to the argument that the protections granted by the notice provisions in tort immunity acts are necessary because a governmental entity, unlike a private entity, cannot ordinarily avoid the risks created by its activities by simply ceasing to engage in those activities. (Van Alstyne, *Governmental Tort Liability: A Decade of*

*Change,* 1966 U. Ill. L.F. 919, 923; Baum, *Tort Liability of Local Governments and Their Employees: An Introduction to the Illinois Immunity Act,* 1966 U. Ill. L.F. 981, 986.) Timely notice allows the governmental entity the opportunity to examine the location of the occurrence at an early date so that conditions do not change and evidence does not become stale, to plan its budget in light of prospective liabilities, to settle claims and avoid costly civil litigation, and to correct the alleged defective condition so that future injuries and liabilities may be avoided. (*Saragusa v. City of Chicago* (1976), 63 Ill. 2d 288, 293; *King v. Johnson* (1970), 47 Ill. 2d 247, 250-51; *People ex rel. Department of Transportation v. Superior Court* (1980), 26 Cal. 3d 744, 766, 608 P.2d 673, 687, 163 Cal. Rptr. 585, 599 (Clark, J., dissenting); Corboy, *Shielding the Plaintiff's Achilles Heel: Tort Claim Notices to Governmental Entities,* 28 De Paul L. Rev. 609, 612 (1979).) In view of the fact that under the provisions of section 8—102 a governmental entity need not be given notice for almost a year after the occurrence it can hardly be contended that the statute necessarily assures an opportunity to conduct an inspection immediately after the injury is sustained. We are of the opinion that failing to apply the notice requirements to a defendant seeking contribution from a governmental entity will not result in disaster for those entities.

Contrary to the contentions of the village and *amicus,* we conclude that our decision here does not permit the injured plaintiff to recover indirectly from the governmental entity although he is precluded from directly recovering from it. A similar argument was considered in *People ex rel. Department of Transportation v. Superior Court.* The Supreme Court of California noted that the plaintiff would still be barred from recovering directly from the governmental defendant, and if he failed to prove that the nongovernmental defendant was liable, or if that defendant were insolvent, the plaintiff would be able to recover noth-

ing, either directly or indirectly, from the governmental defendant. Moreover, the doctrine of joint and several liability allows the plaintiff to recover fully for his injuries from the nongovernmental defendant whether or not that defendant can recover from the governmental defendant. As this court has recently reaffirmed the viability of the doctrine of joint and several liability (*Coney v. J. L. G. Industries, Inc.* (1983), 97 Ill. 2d 104), plaintiff gains nothing if defendant is permitted to recover contribution from the village. See *People ex rel. Department of Transportation v. Superior Court* (1980), 26 Cal. 3d 744, 761, 608 P.2d 673, 684, 163 Cal. Rptr. 585, 596.

The village, in its reply brief, argues that defendant's public policy argument is in reality an argument that the application of the doctrine of joint and several liability in this case is inequitable. The village notes that this issue has been raised in *Coney v. J. L. G. Industries, Inc.* (1983), 97 Ill. 2d 104, and that if this court "modifies the concept of joint and several liability so that 'no entity will pay more than its determined share' of a common liability," the question of whether McBride will be forced to pay more than his fair share due to the failures of plaintiff to give timely notice will be rendered moot. Subsequent to the submission of briefs in this case, this court decided *Coney v. J. L. G. Industries, Inc.*, and, as previously noted, declined to modify the doctrine of joint and several liability.

Because we hold that the notice provisions contained in the Tort Immunity Act are inapplicable to a defendant seeking contribution from a governmental entity covered by the Act, we need not reach the question whether the notice sent to the village by defendant's insurer constituted sufficient notice under section 8—102 of the Act.

For the reasons stated, the judgment is affirmed.

*Judgment affirmed.*