832 F.2d 383
 Prod.Liab.Rep.(CCH)P 11,580
Daraleen MASON, Plaintiff-Appellee,
v.
F. LLI LUIGI AND FRANCO DAL MASCHIO FU G.B. s.n.c., a
partnership, Defendant, Third-Party
Plaintiff-Appellee, Cross-Appellant,
v.
LIBMAN BROOM COMPANY, Third-Party Defendant-Appellant, Cross-Appellee.
 Nos. 86-1614, 86-1646 and 86-1709.
 United States Court of Appeals,
Seventh Circuit.
 Argued Feb. 17, 1987.
Decided Oct. 6, 1987.
 
 Harlan Heller, Harlan Heller, Ltd., Matton, Ill., for third-party plaintiff-appellee, appellant.
 Ronald L. Lipinski, Seyfarth, Shaw, Fairweather & Geraldson, Gregory R. Sun, Chicago, Ill., for plaintiff-appellee.
 Before BAUER, Chief Judge, CUMMINGS and POSNER, Circuit Judges.
 CUMMINGS, Circuit Judge.
 
 
 1
 In July 1979 plaintiff Daraleen Mason was injured by a broom flagging machine (also known as a cutter/flagger) manufactured by defendant Italian partnership entitled F. LLI Luigi and Franco Dal Maschio Fu G.B. s.n.c. ("Dal Maschio") and located in Salzano, Italy. This kind of machine is used to cut plastic broom fibers to soften their tips. The injury occurred on July 4, 1979, while plaintiff was working in Arcola, Illinois, for Libman Broom Company ("Libman") added by Dal Maschio as the third-party defendant. Plaintiff began to work for Libman at the end of June 1979. Her injury occurred two days after she began operating the flagging machine, when she accidentally stepped on a foot pedal, causing her right arm to be pulled into the machine. As a result she lost her right hand and part of her right forearm. She was the first Libman employee to be injured by one of its flagging machines. Her medical expenses were stipulated to be $11,431.28 and her lost wages totaled $6,462.86. She has been Village Secretary and Deputy Clerk for the Village of Arthur, Illinois, since July 1980. Instead of suing Libman, she settled her claim against it under the Illinois Workers' Compensation Act for about $35,000 according to counsel at oral argument.
 
 
 2
 After a jury trial, judgment was entered against Dal Maschio in the sum of $800,000. In turn, judgment was entered in favor of third-party plaintiff Dal Maschio against third-party defendant Libman in the amount of $280,000 because the jury found that Libman was 35% at fault. According to an affidavit filed by Dal Maschio in support of a motion to dismiss or to quash service upon it, Dal Maschio sold its cutter/flagger machines f.o.b. Italy to Werner Petzold & Co. ("Petzold") in Cockeysville, Maryland.[1] In turn, Petzold sold the cutter/flagger in question to Libman. Werner Petzold, the owner of Petzold, stated in an affidavit that he was not an officer, director or employee of Dal Maschio and received no direct compensation from it. Subsequent unrebutted evidence showed that he visited Libman on several occasions to show how to operate the machines. Although Petzold is a Maryland corporation, Dal Maschio does not deny that Werner Petzold's position with Dal Maschio is similar to an in-house export manager and that he sold its machinery to Libman on several occasions. Dal Maschio often paid for his trips to its factory in Italy or to trade shows in Europe. He and Dal Maschio employee Marcuglia made several trips to Libman to set up the machines, show Libman how to service them, and teach its personnel. The machine in question was specifically designed for Libman's needs.[2]
 
 I.
 
 3
 Dal Maschio contends that it would violate the Due Process Clause of the Fourteenth Amendment to apply the Illinois long-arm statute (Ill.Rev.Stat. ch. 110 Sec. 2-209) to it. Its contention cannot be sustained under the recent decision of the Supreme Court in Asahi Metal Industry Co., Ltd. v. Superior Court of California, --- U.S. ----, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987).[3] There Asahi manufactured tire valve assemblies in Japan and sold them to Cheng Shin Rubber Industrial Co. in Taiwan. Asahi knew that Cheng Shin's tires incorporating Asahi's product would end up in California. The California Supreme Court had held that Asahi's placement of its assemblies in the stream of commerce by delivering them to Cheng Shin in Taiwan, plus Asahi's awareness that some of them would reach California, supported California jurisdiction under the Due Process Clause over a suit by Cheng Shin for indemnification from Asahi. The original plaintiff, a person severely injured in California when his motorcycle's rear tire exploded, had sued only Cheng Shin and had previously settled that action. The Supreme Court reversed, holding in Part II-B of the opinion (which was the opinion of the Court) that it would be unreasonable and unfair and in violation of the Due Process Clause to permit the exercise of personal jurisdiction over Asahi. As in that case, it is true that the burden imposed on Dal Maschio by the exercise of jurisdiction here would be severe since it would require it not only to traverse the distance between Italy and Illinois but also to submit its dispute with plaintiff to a foreign judicial system. Dal Maschio is not qualified to do business in Illinois. It has no office, telephone listing or registered agent there. It owns no bank accounts or property, real or personal, in Illinois, nor does it apparently conduct business there apart from its relations with Libman. Therefore, at first blush, it might be said, as pointed out in Asahi in denying jurisdiction over that Japanese manufacturer:
 
 
 4
 The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders.
 
 
 5
 107 S.Ct. at 1034. Then the Court concluded:
 
 
 6
 Considering the international context, the heavy burden on the alien defendant, and the slight interests of the plaintiff and the forum State, the exercise of personal jurisdiction by a California court over Asahi in this instance would be unreasonable and unfair.
 
 
 7
 Id. at 1035. But in contrast, the interests of the plaintiff and forum State here are heavy, and therefore Asahi is of no avail to Dal Maschio's position.
 
 
 8
 In this case, Dal Maschio made the machine involved in the accident and similar machines especially for Libman, and one of its employees visited Libman in Illinois several times to show how to set up, operate and service the machines and to teach its personnel. Dal Maschio knew that the machines were custom-made for an Illinois manufacturer, viz., Libman, even though shipped and billed to Werner Petzold & Co. in Maryland. Werner Petzold was in fact its export manager rather than an independent distributor. The injury occurred to an Illinois resident in Illinois, and Illinois has an interest in having that injury fully rectified. Unlike Asahi, this case does not involve an action for contribution between two foreign corporations. The factors here suffice to permit jurisdiction to be exercised over Dal Maschio in Illinois under, e.g., World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), and Gray v. American Radiator & Standard Sanitary Corp., 22 Ill.2d 432, 176 N.E.2d 761 (1961),[4] which were relied on by the able district judge in denying Dal Maschio's motion to dismiss or quash service upon it.
 
 
 9
 Like the example used in World-Wide Volkswagen to show where personal jurisdiction would be proper, this defendant delivered "its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum state." 444 U.S. at 297-98, 100 S.Ct. at 567-68. In addition, it purposely availed itself of the privilege of conducting activities within the forum state through its own employee and also its export manager Werner Petzold. See 444 U.S. at 297, 100 S.Ct. at 567.
 
 
 10
 Gray is applicable too because there defendant Titan Valve Manufacturing Company, an Ohio company, sold a faulty valve to co-defendant American Radiator & Standard Sanitary Company in Pennsylvania where it was incorporated into a hot water heater and sold to an Illinois consumer who was injured when it exploded. Jurisdiction over Titan in Illinois was held permissible because, like Dal Maschio, it elected to sell its products for ultimate use in Illinois and therefore its "association with this State [Illinois] is sufficient to support the exercise of jurisdiction." Gray, 22 Ill.2d at 444, 176 N.E.2d at 767.
 
 
 11
 Since the judgment against Dal Maschio cannot be set aside for want of jurisdiction, it is necessary to reach the various contentions on the merits raised by the parties.
 
 II.
 
 12
 Dal Maschio contends that during its contribution case it should have been permitted to introduce evidence of Libman's negligence even though Dal Maschio was sued by Mason on a strict products liability theory.[5] Libman argues to the contrary, contending that when the defendant is sued solely on the basis of strict products liability, a claim for contribution in Illinois can only be maintained on a theory of assumption of risk. At the time of trial, several Illinois cases provided support for the district court's decision to allow Dal Maschio's contribution claim to proceed only on a theory of assumption of risk. See Skinner v. Reed-Prentice Division Packing Machinery Co., 70 Ill.2d 1, 15 Ill.Dec. 829, 374 N.E.2d 437 (1977), certiorari denied, 436 U.S. 946, 98 S.Ct. 2849, 56 L.Ed.2d 787 (1978); Doyle v. Rhodes, 101 Ill.2d 1, 77 Ill.Dec. 759, 461 N.E.2d 382 (1984); Dukes v. J.I. Case Co., 137 Ill.App.3d 562, 91 Ill.Dec. 710, 483 N.E.2d 1345 (4th Dist. 1985). However, in the very recent decision of J.I. Case Co. v. McCartin-McAuliffe Plumbing & Heating, Inc., 118 Ill.2d 447, 114 Ill.Dec. 105, 516 N.E.2d 260 (1987), the Illinois Supreme Court held that "negligence, rather than the concepts of misuse or assumption of the risk," at 464, 114 Ill.Dec. at 113, 516 N.E.2d at 268, is the appropriate means for third-party actions for contributions against an employer when a manufacturer has been sued in strict product liability by a plaintiff-employee. See also Pipes v. American Logging Tool Corp., 139 Ill.App.3d 269, 93 Ill.Dec. 757, 487 N.E.2d 424 (5th Dist. 1985) (approved by the Illinois Supreme Court in J.I. Case ). In J.I. Case, the jury was instructed on three separate theories for contribution--negligence, misuse, and assumption of risk--and allocated 52.95% of the responsibility for damages to the employer with the remaining responsibility to the manufacturer. At 452, 114 Ill.Dec. at 107, 516 N.E.2d at 262. A new trial was not required, however, as the court noted that since "[a] general verdict form encompassing all three theories was used without objection ... the verdict may have rested on the negligence theory." 118 Ill.2d at 464, 114 Ill.Dec. at 113, 516 N.E.2d at 268.
 
 
 13
 This case differs from J.I. Case because in considering Dal Maschio's contribution claim, the jury was not even instructed on negligence and therefore there is not even the possibility, unlike J.I. Case, that the jury's allocation of responsibility between Dal Maschio and Libman is in accord with Illinois law. In addition, because the case was tried purely on an assumption of risk theory, the district court excluded evidence of allegedly negligent conduct by Libman that might have influenced the jury to increase the amount of responsibility that it allocated to Libman. For example, rejected testimony by Mason would have shown that after working for only five days and with no prior industrial experience, Mason was assigned to operate the broom machine. Because Dal Maschio must be allowed to show evidence of Libman's negligence, cf. J.I. Case, 118 Ill.2d at 464, 114 Ill.Dec. at 113, 516 N.E.2d at 268, we must accede to Dal Maschio's request for a new trial on its contribution claim against Libman.[6]
 
 
 14
 Although we hold that a new trial is necessary on the contribution claim, we must address other issues argued in the briefs that, if accepted by this Court, would obviate the need for a new trial. It is also appropriate to discuss issues related to Mason's claim against Dal Maschio and other issues that will arise upon remand. For example, Dal Maschio alone submits that the $800,000 jury verdict was excessive. The lost wages and medical expenses were $17,894.24, and at her job with the Village of Arthur one year after the verdict she was and apparently still is earning $2 an hour more than when working for Libman. However, plaintiff was right-handed and lost one third of her right forearm, making it difficult for her to perform mundane tasks or to enjoy recreational activities and obtain certain jobs. As we noted in Davis v. Consolidated Rail Corp., 788 F.2d 1260, 1263 (1986), "the loss of a leg [here an initial part of the right arm] is a terrible disfigurement * * * and a substantial award of damages would therefore be entirely justified even without any evidence of pain * * * or reduced longevity." Because of plaintiff's extreme pain until the completion of both surgeries and her omni-present impairment, it cannot be adjudged that the damages awarded, although high, call for a remittitur. Even Libman so conceded at oral argument.
 
 III.
 
 15
 Libman also attempts to argue that it is not subject to a contribution action because it has settled Mason's worker's compensation claim and therefore is no longer "subject to liability in tort" within the meaning of the Contribution Act. Ill.Rev.Stat., ch. 70, p 302(a). Section 5(a) of the Illinois Workers' Compensation Act provides that an employee who is covered under the Act cannot bring a suit to recover damages against his employer. Ill.Rev.Stat., ch. 48, p 138.5(a). The employee's sole remedy is through the worker's compensation mechanism provided by the state. The Illinois Supreme Court has noted that "[t]he legislative intention underlying section 5 of the Workers' Compensation Act would obviously be frustrated if an injured employee could recover damages in a common law action and workmen's compensation benefits as well." Rhodes v. Industrial Commission, 92 Ill.2d 467, 471, 66 Ill.Dec. 83, 85, 442 N.E.2d 509, 511 (1982). In light of the purpose behind section 5(a), Libman's argument that it is not "subject to liability" because it is immunized from a tort suit by section 5(a) might seem correct. Although a similar argument has been accepted by the courts in several states, see cases cited in Doyle v. Rhodes, 101 Ill.2d at 6-7, 77 Ill.Dec. at 762, 461 N.E.2d at 385 (1984), the Illinois Supreme Court in Doyle rejected that argument, concluding that the employer is "subject to liability in tort" within the meaning of the Contribution Act because the worker "may recover a tort judgment against his employer for a work-related injury if the employer fails to raise the defense the Workers' Compensation Act gives him." Id. at 10, 77 Ill.Dec. at 764, 461 N.E.2d at 387. The dissent in Doyle criticized the majority's "construction of the Contribution Act" as "difficult, if not impossible, to understand." Id. at 19, 77 Ill.Dec. at 767, 461 N.E.2d at 391 (Ryan, C.J., dissenting). As then Chief Justice Ryan pointed out, the practical effect of the majority's interpretation was to render the "subject to liability in tort" language meaningless because theoretically any person or entity could be "subject to liability in tort" if it failed to take the action necessary to defend against the plaintiff's suit. Id. at 20, 77 Ill.Dec. at 768, 461 N.E.2d at 391. The former Chief Justice characterized the majority's reading of the Contribution Act as "strained and not convincing" and merely "an attempt to circumvent section 5(a) and hold that an employer is subject to liability in tort." Id. at 22, 77 Ill.Dec. at 769, 461 N.E.2d at 392. This decision has also been critized by one commentator as simply a "judicial weighing of economic and social values" in favor of the injured plaintiff. See Ossey, Workers' Compensation Limits as a Legal Fiction in Illinois, 74 Ill. Bar J. 22, 28 (1985). The dissenting Chief Justice and the supporting critics may be correct but our responsibility in this case is not to question Illinois law but simply to follow it.
 
 
 16
 Libman's attempts to distinguish Doyle are unconvincing. It claims that this case is different from Doyle because there the employer had only made an offer to settle the compensation claim whereas here the compensation claim has been settled and Mason has executed a release. Under the reasoning in Doyle, however, this difference is insignificant because the release in the worker's compensation claim would merely provide a defense that, like section 5(a), would not preclude Libman from being "subject to liability in tort" within the meaning of the Illinois Contribution Act. Moreover, the Illinois Supreme Court itself apparently thought the difference unimportant because it decided Doyle without knowing the "status or disposition" of the worker's compensation proceedings that had been brought in that case. Doyle, 101 Ill.2d at 5, 77 Ill.Dec. at 761, 461 N.E.2d at 384. We conclude that Doyle allows Dal Maschio's claim against Libman for contribution because Libman is "subject to liability in tort" within the meaning of the Illinois Contribution Act.
 
 
 17
 Libman also submits that the $280,000 judgment entered in favor of Dal Maschio and against Libman should have been amended to read that "judgment was entered in favor of Dal Maschio for such sums that Dal Maschio paid to the plaintiff in excess of Five Hundred Twenty Thousand Dollars * * * " (Br. 30). We disagree. Although the amounts may change after a new trial, the same issue will presumably arise after the new trial, and therefore we will address Libman's argument prior to remand.
 
 
 18
 The language of the Illinois Contribution Act obviates any need to amend the language of the judgment in order to secure the outcome Libman seeks. The Contribution Act clearly states:
 
 
 19
 The right to contribution exists only in favor of a tortfeasor who has paid more than his pro rata share of the common liability, and his total recovery is limited to the amount paid by him in excess of his pro rata share. No tortfeasor is liable to make contribution beyond his own pro rata share of the common liability.
 
 
 20
 Ill.Rev.Stat., ch. 70, p 302(b) (emphasis added). "According to the language of the Act itself, a tortfeasor is entitled to contribution only when he has paid an amount in excess of his pro rata share of liability." Victory Memorial Hospital Assoc. v. Schmidt, Garden & Erickson, 158 Ill.App.3d 931, 110 Ill.Dec. 776, 511 N.E.2d 953 (2d Dist.1987). As a result of the explicit language of the Act, the qualification that Dal Maschio is not entitled to contribution until it has paid Mason more than the amount determined at the new trial to be its pro rata share is implicit in the judgment against Libman. As such, the judgment need not be amended to state the obvious explicitly.
 
 
 21
 In Stephens v. McBride the Illinois Appellate Court differentiated between the ability to assert a cause of action under the Contribution Act and the accrual of the right to contribution under the Act. The court noted that while "the cause of action can be asserted 'before ... payment, by counterclaiming or by third-party action,' " "[u]nder the Contribution Act the right of contribution accrues upon the tortfeasor's payment of 'more than his pro rata share.' " Stephens v. McBride, 105 Ill.App.3d 880, 887, 61 Ill.Dec. 673, 678, 435 N.E.2d 162, 167 (1st Dist. 1982), affirmed, 97 Ill.2d 515, 74 Ill.Dec. 24 (1983) 455 N.E.2d 54 (citing Ill.Rev.Stat., ch. 70, paragraphs 305, 302(b)). A further articulation of this distinction appears in Verson Allsteel Press v. Major Spring & Manufacturing Co., 105 Ill.App.3d 419, 61 Ill.Dec. 303, 434 N.E.2d 456 (1st Dist. 1982). The court in Verson cited the following as an "accurate enunciation of the law" of Illinois:
 
 
 22
 The right of contribution between joint tortfeasors arises at the time of the concurring negligent acts. Until one of the joint tortfeasors pays more than his portionate share of the underlying claim, the right remains contingent, subordinate and inchoate.
 
 
 23
 Id. at 423, 61 Ill.Dec. at 306, 434 N.E.2d at 459 (quoting Minneapolis, St. Paul & Sault Ste. Marie R.R. Co. v. Fond du Lac, 297 F.2d 583, 585 (7th Cir.1961) (applying Wisconsin law)). Thus, despite Dal Maschio's right to assert its claim and secure a judgment against Libman, until Dal Maschio pays Mason more than its pro rata share of the $800,000 judgment against it, its right to contribution through execution on the judgment remains "contingent, subordinate and inchoate."
 
 
 24
 For Dal Maschio to execute the judgment and "be entitled to contribution, the evidence must show the amount he has paid in excess of his just proportion of the joint indebtedness." Falcone v. Hinsdale Gynecology & Obstetrics, Ltd., 148 Ill.App.3d 439, 102 Ill.Dec. 137, 499 N.E.2d 694 (2d Dist. 1986). The court in Falcone held that "[s]ince defendants ... paid nothing in excess of their pro-rata share, they are not entitled to contribution from the plaintiff." Id., 102 Ill.Dec. at 143, 499 N.E.2d at 700. See also, Victory Memorial Hospital; Houser v. Witt, 111 Ill.App.3d 123, 66 Ill.Dec. 799, 443 N.E.2d 725 (4th Dist.1982). Accordingly, only when Dal Maschio produces evidence establishing payments to Mason in excess of its pro rata share, as determined at retrial, will it be entitled to contribution from Libman. We conclude that the district court acted properly in not amending the judgment to provide for conditions already imposed by the terms of the Illinois Contribution Act.
 
 IV.
 
 25
 In summary, we affirm the $800,000 judgment that Mason received against Dal Maschio. However, we vacate the $280,000 judgment that Dal Maschio received against Libman and in accordance with Dal Maschio's request remand for a new trial on its contribution claim. Circuit Rule 36 shall not apply. Costs to plaintiff-appellee.
 
 
 
 [1]
 Werner Petzold & Co. was dismissed as a defendant by stipulation in February 1986 (Dal Maschio App. item 2)
 
 
 [2]
 These facts are undenied in Dal Maschio's briefs
 
 
 [3]
 At oral argument the parties argued that this case might be controlled by Asahi which was then pending in the Supreme Court
 
 
 [4]
 Gray was cited with approval by four Justices in Asahi, 107 S.Ct. 1037. We followed it in Nelson by Carson v. Park Industries, Inc., 717 F.2d 1120, 1126 n. 6 (7th Cir.1983), certiorari denied, 465 U.S. 1024, 104 S.Ct. 1278, 79 L.Ed.2d 682 (1984). Among others, that case and Hedrick v. Daiko Shoji, Ltd., Osaka, 715 F.2d 1355 (9th Cir.1983) also support jurisdiction here. See also cases collected in 107 S.Ct. 1036 n. 1
 While advocating heightened constitutional scrutiny before permitting the exercise of jurisdiction over foreign defendants, Professor Gary B. Born acknowledges that a state should be able to exercise jurisdiction when, as here, the forum state generally would have an interest in adjudicating claims that arise from injuries suffered within the state, from conduct taking place within the state, or from out-of-state conduct affecting domiciliaries of the state. Since this is not a federal question case, we need not apply the "pure national contacts test" he proposes for such cases. Born, "Reflections on Judicial Jurisdiction in International Cases," 17 Ga. J. Int'l & Comp. L. 1, 42-43 (1987).
 
 
 [5]
 Plaintiff abandoned her claims of Dal Maschio's negligence
 
 
 [6]
 Libman suggests that it was impermissible for Dal Maschio, sued by Mason for strict products liability, to bring its contribution action against Libman for negligence. To the extent that this might have been a viable contention at the time this case was briefed and argued, but see Doyle v. Rhodes, 101 Ill.2d at 17, 77 Ill.Dec. at 767, 461 N.E.2d at 390 (no requirement that the bases for liability among the contributors be the same), it is foreclosed by the Supreme Court's decision in J.I. Case. As already noted, the court held that when the plaintiff sues the defendant on a strict liability theory, the defendant's action for contribution should be based on negligence. 118 Ill.2d at 464, 114 Ill.Dec. at 113, 516 N.E.2d at 268