(Nos. 57540, 57554 cons.—

CHARLES L. DOYLE, Appellee, v. KATHLEEN C. RHODES, Appellee and Appellant (Rein, Schultz & Dahl, Appellant and Appellee).

*Opinion filed January 20, 1984.—Rehearing denied March 30, 1984.*

RYAN, C.J., dissenting.

Turner & Shoemaker, of Rockford (Harold L. Turner,

4

of counsel), for appellee and appellant Kathleen C. Rhodes.

Robert K. Clark and Robert H. Clark, of Clark & Heaslip, of Rockford, and Douglas F. Stevenson, of Rooks, Pitts, Fullagar & Poust, of Chicago, for appellant and appellee Rein, Schultz & Dahl.

Thomas J. Keevers, of Chicago, for *amicus curiae* Liberty Mutual Insurance Company.

JUSTICE SIMON delivered the opinion of the court:

We are required here to construe and apply the Illinois Contribution Among Joint Tortfeasors Act (Ill. Rev. Stat. 1981, ch. 70, par. 301 *et seq.*) (hereafter referred to as the Contribution Act) which was enacted following the decision in *Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1, *cert. denied* (1978), 436 U.S. 946, 56 L. Ed. 2d 787, 98 S. Ct. 2849. More specifically we are called upon to decide whether the immunity of an employer from an action at law by an injured employee provided by sections 5(a) and 11 of the Workers' Compensation Act (Ill. Rev. Stat. 1981, ch. 48, pars. 138.5(a), 138.11) also bars an action for contribution against the employer by a third party who was partially responsible for the employee's injury; in addition we are asked to decide whether a person who fails to comply with a safety statute is liable in contribution for the entire judgment or only that portion of the judgment attributable to his failure.

The original plaintiff, Charles L. Doyle, sued the defendant, Kathleen C. Rhodes, in the circuit court of Winnebago County seeking recovery for injuries he received while at work as a highway flagman employed by Rein, Schultz & Dahl, a highway contractor, when he was struck by an automobile driven by the defendant. The defendant filed a third-party complaint against Rein, Schultz & Dahl seeking contribution under the statute

set forth above. In her third-party complaint, defendant charged that Rein, Schultz & Dahl was negligent and also that it had violated provisions of "An Act to protect workers and the general public from injury or death during construction or repair of bridges and highways ***" (Ill. Rev. Stat. 1981, ch. 121, par. 314.1 *et seq.*) (hereafter referred to as the Road Construction Injuries Act). An interrogatory answer filed by the injured employee stated that his employer's compensation carrier had made an offer to settle his compensation claim; we find no further references in the record to the status or disposition of compensation proceedings.

The circuit court dismissed the third-party complaint on the motion of the third-party defendant and certified under Supreme Court Rule 304(a) (73 Ill. 2d R. 304(a)) that there was no just reason to delay appeal. The appellate court reversed the circuit court with instructions to the circuit court to vacate its order dismissing the third-party complaint. (109 Ill. App. 3d 590.) It held that, although the third-party complaint for contribution stated a cause of action, the third-party defendant would be responsible only for the proportion of Doyle's judgment against the third-party plaintiff that was caused by either the third-party defendant's negligence or failure to comply with the requirements of the Road Construction Injuries Act.

Both the third-party plaintiff and the third-party defendant sought leave to appeal. The third-party plaintiff contended by her petition that, because we held in *Vegich v. McDougal Hartmann Co.* (1981), 84 Ill. 2d 461, that contributory negligence was not a defense to a claim charging violation of the Road Construction Injuries Act, the full burden of the loss for a wilful violation fell upon the road contractor, and the third-party defendant was liable under the contribution statute for the entire amount of the judgment rather than a portion

determined by the extent of its comparative negligence. The third-party defendant, by its petition, contended that because of the exclusive remedy provision of the Workers' Compensation Act, it was not liable to Doyle, its employee, in tort and consequently was not subject to recovery under the contribution statute. For that reason, it urged, the third-party plaintiff was not entitled to any recovery against it. We allowed both petitions for leave to appeal (87 Ill. 2d R. 315) and consolidated them.

We address first the third-party defendant's contention that its statutory immunity under sections 5(a) and 11 of the Workers' Compensation Act from tort actions by its employees also immunizes it from this claim under the Contribution Act.

The relevant portion of the Contribution Act provides:

"Right of Contribution. (a) Except as otherwise provided in this Act, where 2 or more persons are *subject to liability in tort* arising out of the same injury to person or property, or the same wrongful death, there is a right of contribution among them, even though judgment has not been entered against any or all of them." (Emphasis added.) Ill. Rev. Stat. 1981, ch. 70, par. 302(a).

The employer argues here that a workers' compensation claim is the sole remedy in Illinois of an injured employee against his employer, and that the employer is not "subject to liability in tort" to its employee and, therefore, the Contribution Act is not applicable to an employer in situations involving injury to one of its employees.

Many jurisdictions which recognize the principle of contribution among tortfeasors do not permit claims for contribution by a third party sued by an injured employee against the plaintiff's employer even where the employer's concurring negligence contributed to the injury. (*E.g., Firestone Tire & Rubber Co. v. Thompson Aircraft Tire Corp.* (Fla. App. 1977), 353 So. 2d 137; *Cacchillo v. H. Leach Machinery Co.* (1973), 111 R.I. 593, 305 A.2d 541; *Farren*

*v. New Jersey Turnpike Authority* (1954), 31 N.J. Super. 356, 106 A.2d 752; *Lovette v. Lloyd* (1953), 236 N.C. 663, 73 S.E.2d 886; *Baltimore Transit Co. v. State ex rel. Schriefer* (1944), 183 Md. 674, 39 A.2d 858; see generally Annot., 53 A.L.R.2d 977 (1957).) In some of these jurisdictions, provisions of the Workers' Compensation Act have been held to preclude such third-party claims, while in others it has been decided that the contribution statute does not permit them. See Weisgall, *Product Liability in the Workplace: The Effect of Workers' Compensation on the Rights and Liabilities of Third Parties*, 1977 Wis. L. Rev. 1035, 1041-43 nn.24-31.

In Illinois, however, the starting point for determining the interplay of the Contribution Act and the Workers' Compensation Act is *Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1, *cert. denied* (1978), 436 U.S. 946, 56 L. Ed. 2d 787, 98 S. Ct. 2849, the decision which overturned the long-standing common law rule which prohibited contribution among tortfeasors. *Skinner*, like this case, involved a claim for contribution against an employer who had already been subjected to a workmen's compensation claim by his employee. The employee filed a tort action, seeking to recover for his injury, against the manufacturer of an injection molding machine on which the employee was working when it malfunctioned. As in this case, the original defendant in *Skinner* filed a third-party complaint against the plaintiff's employer claiming contribution. The claim against the original defendant, the manufacturer, in *Skinner* was based on strict product liability because of the alleged malfunction of the machine, rather than on negligence, the basis for the action against Rhodes, the original defendant and third-party plaintiff in this case. Also, the third-party complaint in *Skinner* alleged negligence by the employer which this court construed to allege misuse of the product and assumption of risk on the part of the employer, while in this case Rhodes

alleged both negligence on the part of the employer and failure to comply with the Road Construction Injuries Act, a safety statute. We find nothing in these differences sufficient to prevent the following conclusion in *Skinner* from being equally applicable to this case: "The fact that the employee's action against the employer is barred by the Workmen's Compensation Act (Ill. Rev. Stat. 1975, ch. 48, pars. 138.5, 138.11) would not preclude the manufacturer's third-party action against the employer for indemnification (*Miller v. DeWitt*, 37 Ill. 2d 273) and should not serve to bar its action for contribution." (70 Ill. 2d 1, 15-16.) Thus, were it not for the intervening enactment of the Contribution Act in September 1979, we would simply hold, in reliance on *Skinner*, that the employer was not immune from the third-party action. The question in this case, however, is whether the statute enacted subsequent to *Skinner* changes the employer's posture. Our conclusion is that it does not.

The statute, as adopted in Illinois, was intended to codify the *Skinner* decision, not to diminish its scope. Its sponsor in the House of Representatives, Representative Daniels, and Representative Jaffe both stated on June 14, 1979, that the purpose of the bill was to codify the decision in the *Skinner* case, and there is nothing in the brief Senate and House debates to indicate that it had any other purpose. See 81st Ill. Gen. Assem., Transcript of House Proceedings, June 14, 1979, at 18, 21 (statements of Representative Daniels) (statements of Representative Jaffe); compare 81st Ill. Gen. Assem., Transcript of Senate Proceedings, May 14, 1979, at 173-76. Consistent with the views expressed by Representatives Daniels and Jaffe are the recent observations of this court in *Coney v. J. L. G. Industries, Inc.* (1983), 97 Ill. 2d 104, 126, and *Stephens v. McBride* (1983), 97 Ill. 2d 515, 521-22. In the former case we said "*Skinner* *** was codified in 'An Act in relation to contribution among joint tortfeasors.' " In *Stephens* our

reference to this subject was again unequivocal. We said there: "The doctrine of contribution was recognized in this jurisdiction in 1977 when this court decided *Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1. The rule adopted in *Skinner* was codified and clarified by the General Assembly in 1979 in the Contribution Among Joint Tortfeasors Act (Ill. Rev. Stat. 1979, ch. 70, par. 301 *et seq.*)." These unanimous utterances filed so recently should put to rest any question as to whether this court believes that the Contribution Among Joint Tortfeasors Act as adopted in this State was intended to modify *Skinner* rather than to codify it.

This court's decision in *Skinner* provides a more equitable solution to the problem posed by contribution in employment contexts than *Miller v. DeWitt* (1967), 37 Ill. 2d 273, 288-89. In that case, decided long before *Skinner,* this court held that a third party could seek indemnity from an employer who was subject to a workmen's compensation claim for a work-related injury suffered by an employee, thereby shifting the entire tort obligation to the employer. This court pointed out in *Skinner* that allowing contribution would produce less harsh results than a claim for indemnification. It would indeed be anomalous to hold that the contribution statute is not applicable in a case such as the one under discussion, for if that were the result the employer could be subjected once again to the indemnity remedy recognized by *Miller v. DeWitt,* leaving him potentially liable by way of indemnification for the entire injury instead of for a portion of the judgment based on the proportion of his responsibility for the injury to that of the other tortfeasors. This establishes to our satisfaction that the intent of the contribution statute was to reach anyone who is culpable regardless of whether they have been immunized from a direct tort action by some special defense or privilege.

The employer offers no solution for this anomaly, nor

does it take issue with the view that the intent of the legislature was to codify rather than overrule *Skinner*. However, the employer argues, in effect, that the language employed in the Contribution Act is unambiguous and must be given effect as written without resorting to extrinsic aids to construction such as legislative debates. (See, *e.g., People v. Robinson* (1982), 89 Ill. 2d 469, 475-76; *People v. Haron* (1981), 85 Ill. 2d 261, 266-67; *Western National Bank v. Village of Kildeer* (1960), 19 Ill. 2d 342, 350.) The employer asserts that, in this regard, the statutory requirement that both defendants be "subject to liability in tort" is clear and precludes the existence of a right of contribution where one of the defendants is liable to the plaintiff on a no-fault basis and enjoys a special immunity from tort liability.

The language relied on by the employer is neither unambiguous nor should it be construed in the way the employer seeks to apply it. The Workers' Compensation Act provides employers with a defense against any action that may be asserted against them in tort, but that defense is an affirmative one whose elements—the employment relationship and the nexus between the employment and the injury—must be established by the employer, and which is waived if not asserted by him in the trial court. (*Robertson v. Travelers Insurance Co.* (1983), 95 Ill. 2d 441, 451; *Hindle v. Dillbeck* (1977), 68 Ill. 2d 309, 317-18; *Meador v. City of Salem* (1972), 51 Ill. 2d 572, 578-79; *Victor v. Dehmlow* (1950), 405 Ill. 249, 252-53; *Milton v. Illinois Bell Telephone Co.* (1981), 101 Ill. App. 3d 75, 81.) Thus, the plaintiff may recover a tort judgment against his employer for a work-related injury if the employer fails to raise the defense the Workers' Compensation Act gives him (see *Rhodes v. Industrial Com.* (1982), 92 Ill. 2d 467, 471), and on occasion the employer may choose not to raise it in the hope that the plaintiff will be unable to prove negligence to a jury's satisfaction. The potential for tort liability exists

until the defense is established. As this court has recently decided in interpreting the phrase of the Contribution Act at issue here, " 'liability' is determined at the time of the injury out of which the right to contribution arises, and not at the time the action for contribution is brought" (*Stephens v. McBride* (1983), 97 Ill. 2d 515, 520; see also *Markey v. Skog* (1974), 129 N.J. Super. 192, 204, 322 A.2d 513, 519-20). At the time of an injury for which an employer's negligence is partly responsible, the employer is in fact "subject to liability in tort" to his employee, although that liability can be defeated depending on the response he chooses to make to his employee's claim in the event the employee decides to sue in tort.

Recently in *Lake Motor Freight, Inc. v. Randy Trucking, Inc.* (1983), 118 Ill. App. 3d 626, our appellate court has held that an employer cannot be liable to a third party for contribution for an accident which its negligence helped to bring about, rejecting the holding of the appellate court in the instant case that an employer can be held liable under our contribution act. The *Lake Motor Freight* holding accords with the interpretation given by courts to contribution acts in a number of other States, as we have previously noted. However, we reject that interpretation of our act for two reasons. First, the contribution acts of the States which held as *Lake Motor Freight* did typically required that the parties between whom contribution was to occur be jointly liable in tort or be actually liable on a tort theory (*e.g.*, Md. Ann. Code art. 50, sec. 22(a) (Supp. 1943) (liability must be "joint"); N.J. Stat. Ann. sec. 2A: 53A—2 (1952) (same); R.I. Gen. Laws sec. 10—6—3 (1970) (same); N.C. Gen. Stat. sec. 1—240 (1951) (both parties must be "jointly and severally liable *** either as joint obligors or joint tortfeasors," and there must, in addition, be a "joint tort"); Fla. Stat. Ann. sec. 768.31(2)(a) (West Supp. 1976) (the parties must "become jointly or severally liable in tort")), while the Illinois contribution act requires only that

the parties be "subject to liability in tort arising out of the same injury" (Ill. Rev. Stat. 1981, ch. 70, par. 302(a)), regardless of whether the liability is joint (*Morgan v. Kirk Brothers, Inc.* (1982), 111 Ill. App. 3d 914, 918). As we have explained, the cases in this State interpreting the exclusive-remedy provisions of our workers' compensation act uniformly hold that they bar an action in tort only if the facts establishing that the injury was work related are proved at trial, and until that time the employer remains "subject to liability in tort" to his employee for his negligence. Second, it would not be persuasive in this instance that " '[w]hen a statute is adopted from another State and has been previously construed by the courts of that State the statute is presumed to have been adopted with the construction placed upon it' " (*Lake Motor Freight, Inc. v. Randy Trucking, Inc.* (1983), 118 Ill. App. 3d 626, 631, quoting *Kerner v. Thompson* (1936), 365 Ill. 149, 155), even if the language of our contribution act were identical to that employed in the statutes of other States. In interpreting our statutes the intention of our legislature must be discerned by whatever means possible, and, at least if expressed, that intent takes precedence over the interpretations of other legislatures and courts of other jurisdictions no matter how compelling their logic may be. As pointed out above, the legislative debates preceding the adoption of our contribution act make it clear that the General Assembly meant to codify the *Skinner* decision, which allowed contribution against an employer, not to overrule that decision.

An outstanding authority on workmen's compensation has criticized the *Skinner* decision contending it pays too little attention to the policy underlying the exclusivity provisions and has suggested that the Illinois Contribution Act which was adopted a year and a half after *Skinner* precludes the *Skinner* result: "It [the Illinois Contribution Act] makes no reference to the *Skinner* problem, but its lan-

guage clearly does not support contribution on the *Skinner* facts. It authorizes contribution 'where 2 or more persons are subject to liability *in tort* arising out of the same injury. . . .' Moreover, it is no coincidence that, although the effective date of the amendment was September 14, 1979, it applies to causes of action arising on or after March 1, 1978—the exact final date of the *Skinner* decision." (2A A. Larson, Workmen's Compensation sec. 76.39, at 14—626 (1983).) However, the legislative debates reveal that the specific intention of the Act was to codify *Skinner,* as we have already pointed out, and nothing in those debates even remotely suggests a desire to modify *Skinner* or to change the impact of the law on the facts of that case which like this case involves an employer-employee relationship. In fact, Professor Larson in his treatise does not appear to have abandoned his earlier advocacy of discovering a way to prevent what he observed to be the unfairness of immunizing employers who have responded in workmen's compensation from actions for contribution by third parties who are strangers to the employment relationship. Eight years before the *Skinner* decision, Professor Larson wrote:

> "[S]ome device ought to be found to arrive at a compromise of the interests of employer and third party in this class of cases. The disadvantage of most dispositions of this total problem is one that is characteristic of the common-law system: the inability to share a loss adjustment because of the legal imperative of granting total victory to plaintiff or defendant. Thus, the usual rule that contribution by the negligent employer is impossible because conceptually he cannot be a joint tortfeasor, or that his negligence is not a defense in a third-party action, is too absolute a victory for the employer, who actually comes out ahead by being reimbursed for his compensation outlay." (Larson, *Workmen's Compensation: Third Party's Action Over Against Employer,* 65 Nw. U.L. Rev. 351, 366 (1970).)

Professor Larson in his treatise expresses the same point

of view. (See 2A A. Larson, Workmen's Compensation sec. 76.11 (1983).) The device provided by *Skinner* answers this problem, and there is no evidence of a desire by the Illinois legislature to return to sole reliance on the indemnification remedy previously afforded by *Miller v. DeWitt,* which in many cases may place a disproportionate share of tort liability on the employer.

We therefore do not interpret the phrase "subject to liability in tort" as being inconsistent with the legislature's expressed desire to codify the *Skinner* decision, and we conclude that the Contribution Act focuses, as it was intended to do, on the culpability of the parties rather than on the precise legal means by which the plaintiff is ultimately able to make each defendant compensate him for his loss. "The theory is that as between the two tortfeasors the contribution is not a recovery for the tort but the enforcement of an equitable duty to share liability for the wrong done." (*Puller v. Puller* (1955), 380 Pa. 219, 221, 110 A.2d 175, 177.) Consequently we hold that, under the Contribution Act, the employer's immunity from a suit in tort by its employee as plaintiff is not a bar to a claim for contribution against it by a defendant held liable to such a plaintiff.

In this connection, however, we feel compelled to invite the attention of the parties to the possible relevance of the provisions of section 5(b) of the Workers' Compensation Act (Ill. Rev. Stat. 1981, ch. 48, par. 138.5(b)). In substance it allows an employer to recoup the amount of the compensation paid by him to his injured employee from the proceeds of any award, judgment or settlement fund out of which the employee might be compensated for his injury by a third party (such as Rhodes in this case) who has caused the employee's injuries. The extent to which any right of contribution from the employer under the Contribution Act may impact upon this right of recoupment by the employer has not been raised by the parties in their

pleadings and consequently not briefed. At this point, absent the assistance of any guidance by the third-party plaintiff and the employer, and bearing in mind that this case is still at the pleading stage, we are not prepared to indicate how this aspect of the Compensation Act may affect the operation of the Contribution Act or what adjustments will be necessary because of the recoupment provision. Nevertheless, we caution that some accommodation between these two statutes may be in order.

We now proceed to consider the issue raised by the third-party plaintiff in this court. It involves the interplay between a safety statute such as the Road Construction Injuries Act and the right of contribution. The third-party plaintiff contends that if Rein, Schultz & Dahl has violated the Road Construction Injuries Act it should bear all, rather than merely a portion, of the expense of compensating the injured party, even if the third-party plaintiff's negligence also contributed to the injury. She argues that the intent of the Road Construction Injuries Act was to impose a special liability for violations of it so as "to prevent accidents before they occur" (*Vegich v. McDougal Hartmann Co.* (1981), 84 Ill. 2d 461, 467) and to prevent or minimize injuries to those who come in contact with the extraordinary hazards of a road-construction site, so that ordinary negligence on their part might not have fatal results. (See *Schultz v. Henry Ericsson Co.* (1914), 264 Ill. 156, 164 (discussing the Structural Work Act (now Ill. Rev. Stat. 1981, ch. 48, pars. 60 through 69).) The third-party plaintiff urges that because a violator could not escape responsibility for violating the Road Construction Injuries Act by asserting the contributory negligence of one who is injured (*Vegich v. McDougal Hartmann Co.* (1981), 84 Ill. 2d 461), he should likewise be unable to do so by pointing to the negligence of someone else.

We believe that the interpretation the *Vegich* opinion gave the Act was correct and that the ideas set forth in

that case remain sound. However, *Vegich* involved the application of contributory negligence, a doctrine under which the choice was between giving the plaintiff all of his damages and giving him nothing, and which was distinct from both comparative negligence (*Alvis v. Ribar* (1981), 85 Ill. 2d 1) and contribution in this regard. In Illinois, as under the common law, contribution is based on "equitable principles [which] require that ultimate liability for plaintiff's injuries be apportioned on the basis of the relative degree to which" the conduct of the various defendants "proximately caused" the injuries (*Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1, 14, *cert. denied* (1978), 436 U.S. 946, 56 L. Ed. 2d 787, 98 S. Ct. 2849). It could be awarded even where, as in *Skinner*, the defendant seeking contribution was under a strict duty to make his product safe, provided that that defendant could show that the party from whom contribution was being sought misused the product or assumed a known risk and did not merely fail to discover a defect that was not obvious to the naked eye. (70 Ill. 2d 1, 15-16.) Inasmuch as the Contribution Act codified *Skinner* rather than changing it, we conclude that the Act requires the same inquiry that *Skinner* did.

The third-party plaintiff cites a number of cases in which courts of this State refused to permit a defendant who had been held liable to a plaintiff under a safety-related statute to shift the loss to a third party whose negligence had also been a cause of the injury. (*Wessel v. Carmi Elks Home, Inc.* (1973), 54 Ill. 2d 127; *Harden v. Desideri* (1974), 20 Ill. App. 3d 590; *Owens v. McTeer* (1973), 13 Ill. App. 3d 126.) These cases all involved indemnification rather than contribution. As indemnity, like contributory negligence and unlike contribution, has the effect of shifting the entire loss from the defendant to another party, these cases do not present the same inquiry that the case before us does. (See generally *Safeway Stores, Inc. v. Nest-*

*Kart* (1978), 21 Cal. 3d 322, 328-29, 579 P.2d 441, 444, 146 Cal. Rptr. 550, 553; Jensvold, *A Modern Approach to Loss Allocation Among Tortfeasors in Products Liability Cases*, 58 Minn. L. Rev. 723 (1974).) We believe that *Skinner* points to the direction in which the law should move in Illinois regarding contribution. An action for contribution shifts only part of the loss depending on the comparative responsibility of the parties and can be harmonized with the purpose of a safety statute, which is typically to fix liability on those who create a situation in which inattentiveness by others may result in injury.

The precise facts presented in the *Vegich* case are not before us, and we venture no opinion here as to whether a defendant whose liability arises from a safety statute may be excused from paying damages to the extent that the injured plaintiff, rather than a third-party tortfeasor, was concurrently negligent. We hold that the Contribution Act envisions a sharing of liability between two culpable defendants even where the liability of one is grounded in the special duties imposed by a safety statute such as the Road Construction Injuries Act and does not depend on a theory of common law negligence. (See *Morgan v. Kirk Brothers, Inc.* (1982), 111 Ill. App. 3d 914 (contribution possible under the Dramshop Act (Ill. Rev. Stat. 1981, ch. 43, par. 135)); *LeMaster v. Amsted Industries, Inc.* (1982), 110 Ill. App. 3d 729 (contribution allowed under the Structural Work Act); *Kelly v. Diesel Construction Division of Carl A. Morse, Inc.* (1974), 35 N.Y.2d 1, 315 N.E.2d 751, 358 N.Y.S.2d 685 (contribution allowed under the New York equivalent of the Structural Work Act, which like the Illinois act had been interpreted as a safety statute imposing absolute liability for the consequences of disobedience).) Rhodes is therefore not entitled, as a matter of law, to recover all of her loss from Rein, Schultz & Dahl merely upon a finding that Rein, Schultz & Dahl violated the Road Construction Injuries Act and that its violation was a prox-

imate cause of Doyle's injuries. To this extent, the holding of the appellate court was correct.

Nevertheless, Rhodes' argument that after *Vegich* a road contractor cannot avoid entire liability for violating the Act by establishing that a motorist was driving too fast for conditions or was otherwise negligent is not entirely without merit, even when considering contribution between two tortfeasors. Just as product liability involves the premise that " '[t]he consumer or user is entitled to believe that the product will do the job for which it was built' " (*Coney v. J. L. G. Industries, Inc.* (1983), 97 Ill. 2d 104, 119, quoting *West v. Caterpillar Tractor Co.* (Fla. 1976), 336 So. 2d 80, 92; see, *e.g., Greenman v. Yuba Power Products, Inc.* (1963), 59 Cal. 2d 57, 63, 377 P.2d 897, 901, 27 Cal. Rptr. 697, 701), so the Road Construction Injuries Act embodies a policy that, absent sufficiently clear advance warnings or personal knowledge of conditions of a road, motorists using it are entitled to believe that it presents no extraordinary hazards that would not normally be associated with a road (*Vegich v. McDougal Hartmann Co.* (1981), 84 Ill. 2d 461, 468; see Sinder, *Chapter 121, Section 314.1 Et Seq.: Another Scaffold Act???*, 59 Ill. B.J. 842, 846-47 (1971)). If the evidence that emerges at trial shows that compliance by the road builder with the Road Construction Injuries Act would have prevented Rhodes from engaging in her "negligent" act or would have reduced its impact on Doyle to zero, Rhodes would not be guilty of comparative negligence under the Act and, contrary to what we understand was the holding of the appellate court, would be entitled to recover the entire award from Rein, Schultz & Dahl, as she urges. If, on the other hand, it is found that Rhodes' negligence would not have been deterred or prevented by compliance with the Act, or that her conduct fell sufficiently far short of acceptable driving practices as to amount to a misuse of the road under any condition, she would be entitled to recover in contribution only to the ex-

tent that the injury to Doyle is found to be the result of the failure of Rein, Schultz & Dahl to make its work site safe rather than of her negligence.

Because this case is before us at the pleading stage, it would be inappropriate to rule here on whether Rhodes is entitled to recover all or just some of any damages awarded against her from Rein, Schultz & Dahl by way of contribution. Resolution of that question will hinge on a determination of the character of her negligence in the light of the road builder's alleged failure to observe the requirements of the Act; this, in turn, will depend on the facts that are developed at trial. We merely affirm the appellate court insofar as it held that Rhodes' third-party complaint seeking contribution should not have been dismissed, and hold that, while Rhodes is not entitled as a matter of law to recover automatically by way of contribution the entire amount of any judgment that may be entered against her simply by showing that Rein, Schultz & Dahl violated the Road Construction Injuries Act, she may do so if she shows that compliance with the Act would have caused her to behave in a nonnegligent fashion or rendered her behavior harmless. On the other hand, if the evidence shows that her negligent act would have occurred despite compliance with the Act by Rein, Schultz & Dahl, and that her conduct would have had some impact on Doyle, she would not be entitled to recover the entire amount of the judgment, but may recover only to the extent that Rein, Schultz & Dahl is found to be responsible for causing Doyle's injuries. We remand the cause to the circuit court for further proceedings consistent with this opinion.

*Appellate court affirmed, as modified;*
*cause remanded, with directions.*

CHIEF JUSTICE RYAN, dissenting:

I find the reasoning of the majority as to the construction of the Contribution Act difficult, if not impossible, to understand. As I read the opinion, it states that, since an

employer may have a judgment entered against him in a negligence action if he does not establish the employer-employee relationship, then he is "subject to liability in tort" and the right of contribution exists. Theoretically, the same reasoning can be applied to any situation. A complete stranger to a transaction may have a judgment entered against him if he is served with process and takes no action to defend himself and permits a judgment to be entered. Under the reasoning of the majority, I suppose that the complete stranger would be a person "subject to liability in tort." Such a construction renders the limitation of the applicability of the act to persons "subject to liability in tort" meaningless.

The opinion, in support of its reasoning, cites several opinions of this court which are inapposite to the issue in this case. *Robertson v. Travelers Insurance Co.* (1983), 95 Ill. 2d 441, states:

> "This court has held the failure to plead and prove such a defense [under section 5(a) of the Workmen's Compensation Act] decisive only where there was a factual question as to whether the injury alleged arose out of and in the course of the work ***. In this case the necessary factual allegations *** appear in the record or were advanced by Robertson himself at trial, and the underlying injury was the subject of a proceeding which led to a workmen's compensation recovery. The question of whether Robertson's [injury] was covered by the Workmen's Compensation Act was therefore purely a legal one, and no purpose would have been served by requiring its pleading before the jury as long as it came to the attention of the trial judge and Robertson was given a chance to respond." (*Robertson v. Travelers Insurance Co.* (1983), 95 Ill. 2d 441, 451-52.)

In *Hindle v. Dillbeck* (1977), 68 Ill. 2d 309, the controlling question was whether the injured plaintiffs were in the line of their duty, that is, the course of their employment, at the time of the accident. This court held that the employer was required to plead and prove that defense which, in that

case, this court held had been done and the plaintiffs therefore were not entitled to recover for negligence against their defendant employer. In *Meador v. City of Salem* (1972), 51 Ill. 2d 572, there was a question of fact whether the plaintiff at the time of the injury was engaged in the line of his duty as an employee of the defendant. The question had been resolved adversely to the employer by the jury's answer to a special interrogatory. The defense of section 5(a) of the Workmen's Compensation Act therefore did not bar the negligence action against the defendant. The other cases cited in the opinion are to the same effect.

I do not dispute that the defendant in a negligence action must raise the defense of section 5(a) of the Workmen's Compensation Act and it must be proved just as any defendant must plead and prove any defense. But when it has been established that the plaintiff was an employee of the defendant and that he was injured in the line of duty, the employer is *not* "subject to liability in tort." Section 5(a) of the Workmen's Compensation Act (Ill. Rev. Stat. 1979, ch. 48, par. 138.5(a)) provides:

> "No common law or statutory right to recover damages from the employer *** for injury or death sustained by any employee while engaged in the line of his duty as such employee other than the compensation herein provided, is available to any employee who is covered by the provisions of this Act ***."

We are not in this case confronted with any question of fact. It is undisputed that the plaintiff Doyle was an employee of the third-party defendant Rein, Schultz & Dahl. In fact, the majority opinion at the outset, in setting forth the nature of the action under consideration, says:

> "The original plaintiff, Charles L. Doyle, sued the defendant, Kathleen C. Rhodes, in the circuit court of Winnebago County seeking recovery for injuries he received *while at work as a highway flagman employed by Rein, Schultz & Dahl, a highway contractor.*" (Emphasis added.) (101 Ill. 2d at 4.)

Thus, all the factual questions have been resolved. The issues involved in the cases discussed above are not present. In fact, as stated in the language in *Robertson* quoted above, the question of whether the employer is "subject to liability in tort" is purely a legal one. Under section 5(a) of the Workmen's Compensation Act, where there is no question that the plaintiff was injured in the line of his duty as an employee, the employer is not "subject to liability in tort." The reasoning of the majority opinion, in an attempt to circumvent section 5(a) and hold that an employer is subject to liability in tort, is strained and not convincing.

In attempting to ascertain the legislative intent that is expressed in the Contribution Act, the majority looks at the legislative debates and concludes that nothing in those debates even remotely suggests a desire to modify *Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1. In my reading of the debates, I find that only two members of the House of Representatives mentioned the *Skinner* decision. Nowhere in the debates does anyone discuss or even allude to the interrelationship between the Contribution Act or the *Skinner* decision and section 5(a) of the Workmen's Compensation Act. The holding of *Skinner* that an employer can be held responsible for contribution was only one small part of the total *Skinner* holding. The fact that two members of the House of Representatives stated simply that the Act is a codification of *Skinner* does not indicate to me that the 122 members of the House who voted for the Act intended that it codify all aspects of *Skinner*, including that small part of the decision relating to contribution by an employer. This is particularly so when the Act plainly limits its application to persons who are "subject to liability in tort."

The language of the Contribution Act is clear and unambiguous. It is the language of the statute itself which affords the best means of ascertaining legislative intent. If legislative intent can be ascertained from the language of

the statute, that intent must prevail and will be given effect without resorting to other aids for construction. (*Western National Bank v. Village of Kildeer* (1960), 19 Ill. 2d 342, 350; *People ex rel. Mayfield v. City of Springfield* (1959), 16 Ill. 2d 609, 614-15.) In *Franzese v. Trinko* (1977), 66 Ill. 2d 136, 139-40, this court stated "[t]here is no rule of construction which authorizes a court to declare that the legislature did not mean what the plain language of the statute imports." (*People v. Moore* (1978), 69 Ill. 2d 520, 523; *Western National Bank v. Village of Kildeer* (1960), 19 Ill. 2d 342, 350.) It is only where the language is unclear or ambiguous that a court may indulge in the process of statutory construction and consult other *indicia* of legislative intent. 2A A. Sutherland, Statutory Construction secs. 45.02, 46.04 (4th ed. 1973).

The language of the Contribution Act appeared clear and unambiguous to Professor Larson, who, as noted in the majority opinion, criticized the *Skinner* decision (101 Ill. 2d at 12-13) and then stated that the language of the Contribution Act "*clearly* does not support contribution on the *Skinner* facts." (Emphasis added.) (2 A. Larson, Workmen's Compensation sec. 76.39, at 14—626 (1983).) I am not willing to disregard the language which Professor Larson deems to be "clear" and look to the statements of two members of the House of Representatives made during debate that the Act codifies *Skinner* to ascertain legislative intent, especially when no reference was made in the debate to that very small part of the *Skinner* decision that the majority relies on in this case.

For the reasons stated, I must respectfully dissent.