Wayne M. MILLER, et al., Plaintiffs,

v.

AFFILIATED FINANCIAL
CORPORATION, et al.,
Defendants.

No. 84 C 20108.

United States District Court,
N.D. Illinois, W.D.

Dec. 27, 1985.

Norman Lindstedt, Holmstrom & Green, P.C., Rockford, Ill., for plaintiffs.

Richard Lee, Epton, Mullin & Druth, Chicago, Ill., Mark T. Dunn, Dunn, Goebel, Ulbrich, Morel & Hundman, Bloomington, Ill., Marshall McMahon, Burke, Griffin,

Chomicz & Weinke, P.C., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Wayne Miller and his mother Eunice (collectively "Millers") have filed a multi-count Amended Complaint against Affiliated Financial Corporation and Stephen, Jack and JoAnne Smith (collectively "Affiliated-Smiths"), asserting a laundry list of fraud-based claims together with two claims alleging a lesser degree of culpability. In turn Affiliated-Smiths filed a Third Party Complaint against their former lawyers, Reno, Zahm, Folgate, Lindberg & Powell ("Reno Zahm"), seeking both indemnification (Third Party Complaint Count I) and contribution (Third Party Complaint Count II). Reno Zahm responded with:

1. a motion to dismiss indemnification Count I in its entirety;

2. a motion to dismiss contribution Count II as to Affiliated-Smiths' claims grounded in (a) the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968, and (b) Illinois common-law fraud; and

3. a Fourth Party Complaint against Metropolitan Life Insurance Company ("Metropolitan"), seeking contribution if Reno Zahm are held liable to Affiliated-Smiths for contribution.

Metropolitan has in turn moved to dismiss the Fourth Party Complaint to the same extent just referred to in paragraph numbered 2.

*Third Party Complaint Count I:*
*Indemnification*

Affiliated-Smiths have not even responded to Reno Zahm's motion to dismiss Third Party Complaint Count I.[1] Whether or not that represents an acknowledgement of the motion's soundness, there is no question Reno Zahm are right. This Court's November 29, 1985 memorandum opinion and or-

---

1. Affiliated-Smiths' counsel have now withdrawn, leaving the clients to go it alone. Counsel were in the case, however, until well after the time of Reno Zahm's motion.

der in *Central Illinois Savings & Loan Association v. DuPage County Bank of Glendale Heights,* 622 F.Supp. 1493 (N.D. Ill.1985), has discussed the identical controlling issues at length, and its reasoning need not be repeated here.

Accordingly Affiliated-Smiths are not entitled to indemnification from Reno Zahm on any valid theory. Third Party Complaint Count I is dismissed.

### *Third Party Complaint Count II and Fourth Party Complaint: Contribution*

■ To the extent contribution is sought (by either Affiliated-Smiths or Reno Zahm) to share liability under RICO, *Central Illinois,* slip op. at 10–15 points the way toward rejection of such relief. This Court there found indemnification inappropriate by analogy to contribution doctrines: It relied for that purpose on the decisions in *Northwest Airlines, Inc. v. Transport Workers Union of America, AFL–CIO,* 451 U.S. 77, 86–99, 101 S.Ct. 1571, 1577–84, 67 L.Ed.2d 750 (1981) and *Texas Industries, Inc. v. Radcliffe Materials, Inc.,* 451 U.S. 630, 638–47, 101 S.Ct. 2061, 2065–70, 68 L.Ed.2d 500 (1981), each of which refused to imply a cause of action for contribution toward a federally-created statutory liability. *Northwest Airlines* and *Texas Industries* provide persuasive precedent (rather than merely analytical analogies) for rejection of a contribution claim as to RICO liability. Accordingly contribution as to Amended Complaint Counts II and III (each sounding in RICO) is denied.

■ But that reasoning does not extend to contribution as to liability for Illinois common-law fraud under Amended Complaint Count V. As to that claim, both Reno Zahm and Metropolitan urge the regime that predated the Illinois Contribution Among Joint Tortfeasors Act (the "Act," Ill.Rev.Stat. ch. 70, ¶¶ 301–305)—that is, a pre-Act judge-made doctrine barring any contribution toward liability for *intentional* torts—remains law under the Act. They are wrong.

True enough, the Act was stimulated by the Illinois Supreme Court's partial disavowal of the common-law prohibition of contribution among joint tortfeasors in *Skinner v. Reed-Prentice Division Package Machinery Co.,* 70 Ill.2d 1, 15 Ill.Dec. 829, 374 N.E.2d 437 (1970). When the Illinois General Assembly acted, however, it did not limit itself to a legislative abolition of the same doctrine as to negligent torts. Instead it spoke in unequivocal terms in Act § 302(a) (emphasis added):

> Except as otherwise provided in this Act, where 2 or more persons are subject to *liability in tort* arising out of the same injury to persons or property, or the same wrongful death, there is a right of contribution among them, even though judgment has not been entered against any or all of them.

Nothing in the Act or its legislative history suggests a limitation of "liability in tort" to *unintentional* torts, so as to exclude contribution in (say) fraud cases. Indeed, at least one judicial dictum contemporary with the Act's adoption suggests the opposite (*Erickson v. Gilden,* 76 Ill.App.3d 218, 220 n. 1, 31 Ill.Dec. 758, 760 n. 1, 394 N.E.2d 1076, 1078 n. 1 (2d Dist.1979) (emphasis added)):

> We note that Senate Bill 308 entitled "AN ACT in relation to contribution among joint tort feasors," has been passed by the General Assembly and was approved by the Governor September 14, 1979. It provides generally for a right of contribution between joint tortfeasors *without limitation as to the type of action in which it may arise....*

It is part of a lawyer's stock in trade to gloss over (or avoid entirely) the plain meaning of language. To that end Reno Zahm and Metropolitan point to judicial statements to the effect the Act was meant to "codify" *Skinner.* See, e.g., *Doyle v. Rhodes,* 101 Ill.2d 1, 8, 77 Ill.Dec. 759, 762, 461 N.E.2d 382, 385 (1984). From such language Reno Zahm and Metropolitan argue the Act—despite its unfettered literal breadth—must be limited in scope to the type of tort involved in *Skinner* itself: the unintentional variety.

Of course the Illinois Supreme Court was well aware the common-law no-contribution rule first arose in the intentional-tort context (*Skinner*, 70 Ill.2d at 7–8, 15 Ill.Dec. at 831–32, 374 N.E.2d at 439–40), and the *Skinner* majority conceded a principal objection to the abolition of the rule was a disinclination to "use the courts for relief of wrongdoers" (*id.* at 12, 15 Ill.Dec. at 834, 374 N.E.2d at 442, quoting *Reese v. Chicago, Burlington & Quincy Railroad Co.*, 55 Ill.2d 356, 363–64, 303 N.E.2d 382, 386 (1973)). But having said all that, *Skinner* went on to state unequivocally (70 Ill.2d at 13, 15 Ill.Dec. at 834, 374 N.E.2d at 442):

> We are of the opinion that there is no valid reason for the continued existence of the no-contribution rule and many compelling arguments against it.

Reno Zahm and Metropolitan cite then-Chief-Justice Ward's *Skinner* dissent in an attempt to show *Skinner* did not alter the no-contribution rule as applied to intentional torts (*id.* at 19, 15 Ill.Dec. at 837, 374 N.E.2d at 445):

> Finally, the majority's review of *Merryweather v. Nixan* (1799), 101 Eng.Rep. 1337, 8 Term R. 186, and of some of this court's decisions suggests that the rule against contribution between joint tortfeasors where the tort was one of intentional misconduct or of concerted action has not been disturbed, but the opinion does not make an explicit pronouncement to this effect. Torts of this character do not come within the rationale of the doctrine of contribution, and the rule denying contribution in that situation should be preserved. I would state clearly that it is being retained.

That statement—spoken after all in dissent—only underscores the fact *Skinner* did *not* expressly limit its holding in the way Reno Zahm and Metropolitan urge.

In view of the Act's open-ended language ("liability in tort"), *Skinner*'s asserted "codification" in the Act does not suggest the Act bars contribution among joint

perpetrators of an intentional tort. After having given itself ample opportunity to limit its holding to negligence and strict liability torts, *Skinner* simply abolished Illinois' no-contribution rule. More significantly, the General Assembly (which obviously was aware of the *Skinner* dissent) saw no reason to adopt more limited language. Absent a limiting ruling by the Illinois courts, it would be impermissible judicial legislation for this Court to distort the statute's unequivocal directive.

This Court therefore concludes the Act—both in terms and as an asserted "codification" of *Skinner*—applies to intentional torts. Reno Zahm's and Metropolitan's motions to dismiss the portions of the Third and Fourth Party Complaints seeking contribution as to liability for common-law fraud are denied.

### Effect on Millers' Proposed Second Amended Complaint

Just before this opinion was written, this Court ruled orally on December 23 that Millers could not file a Second Amended Complaint adding Reno Zahm and Metropolitan to the parties it was suing directly. That ruling took into account the present posture of this case.[2] Among other factors, this Court found Reno Zahm and Metropolitan would be materially prejudiced by the need to expand their discovery significantly if their involvement were materially broadened from potential third-party and fourth-party liability to first-party defendant status.

Accordingly Millers have been left to pursue their newly-filed direct action against Reno Zahm and Metropolitan in the Western Division of this District Court. From the rulings in this opinion, it should be obvious that certain direct liability issues affecting Reno Zahm and Metropolitan—those relating to Millers' claims against Affiliated-Smiths as to which a right to contribution *does* exist—will be determined in this action. To that extent, the decision here will no doubt be conclu-

---

**2.** Discovery has already been closed except for the limited purposes of the Third Party Complaint and Fourth Party Complaint, discovery as

to those matters is scheduled to close by January 10, 1986, and the case has been set for trial in February 1986.

sive among the parties in that new lawsuit via issue preclusion (collateral estoppel) or claim preclusion (res judicata) or both.[3] As this Court said in its oral ruling, that should serve the interests of judicial and litigants' economy, without prejudicing Reno Zahm and Metropolitan as the Second Amended Complaint would have.

### Conclusion

Third Party Complaint Count I is dismissed. Third Party Complaint Count II is dismissed only as to any claimed contribution with respect to the RICO claims under Amended Complaint Counts II and III. Reno Zahm's Fourth Party Complaint is dismissed to the same extent.

---

**3.** Surely Reno Zahm and Metropolitan will not be able to argue in that new action that Millers have split their cause of action, given the fact that this Court's rejection of the Second Amended Complaint was at the instance of Reno Zahm and Metropolitan themselves.