**NORTH AMERICAN VAN LINES, INCORPORATED, Plaintiff–Appellant,**

v.

**PINKERTON SECURITY SYSTEMS, INCORPORATED, FCLS/GM Investors Group, Incorporated, and G.M. Limited Partnership, Defendants–Appellees.**

No. 95–3325.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 6, 1996.

Decided July 16, 1996.

Christopher A. Garcia, Sanchez & Daniels, Chicago, IL, Barbara Naretto Petrungaro, Brian W. Bell, Swanson, Martin & Bell, Chicago, IL, Mark T. Mullen (argued), James Cullen, Cozen & O'Connor, Philadelphia, PA, for North American Van Lines, Inc.

Michael W. Rathsack (argued), Chicago, IL, Michael J. Charysh, David H. Schroeder, Charysh & Schroeder, Chicago, IL, for Pinkerton Sec. Systems, Inc.

· Kurt C. Meihofer, Laura B. Glaser, Johnson & Bell, Chicago, IL, for FCLS/GM Group, Inc.

Before ESCHBACH, KANNE, and EVANS, Circuit Judges.

KANNE, Circuit Judge.

█ The Interstate Commerce Act contains several provisions governing a motor carrier's liability to a shipper for the loss of, or damage to, an interstate shipment of goods. These provisions, which are commonly referred to collectively as the Carmack Amendment, have at one time or another since 1906 resided in different sections of Title 49 of the United States Code. At the time of this lawsuit, they were located at 49

U.S.C. §§ 10103, 11707, 10730.[1] These sections create a nationally uniform rule of carrier liability concerning interstate shipments and preempt all state and common law remedies covering this subject. *Adams Express Co. v. Croninger*, 226 U.S. 491, 504, 33 S.Ct. 148, 151, 57 L.Ed. 314 (1913); *Hughes v. United Van Lines*, 829 F.2d 1407, 1415 (7th Cir.1987), *cert. denied*, 485 U.S. 913, 108 S.Ct. 1068, 99 L.Ed.2d 248 (1988).

This appeal presents for our review the district court's determination that the Carmack Amendment does not preempt the prerequisites to a claim for contribution prescribed by the Illinois Joint Tortfeasor Contribution Act, 740 ILCS 100/2. Because we conclude that the Contribution Act does not apply to the plaintiff's claims for relief, we reverse the judgment of the district court and remand this matter without addressing the preemption issue.

## I

There is no real dispute as to what happened.[2] Brown and Williamson Tobacco Corporation and North American Van Lines, Inc., entered into a transportation agreement on May 1, 1992, under which North American agreed to accept, transport, and deliver household goods tendered for carriage by Brown and Williamson. Each shipment was to be tendered under the terms and conditions of a bill of lading, but in the event of a conflict between those terms and the terms of the transportation agreement, the agreement would control. The agreement provided that North American would be liable as a common carrier for the loss, damage, theft, or destruction of the goods placed in its charge pursuant to the terms outlined in a schedule of rates issued under the applicable governing tariffs. Pursuant to the applicable tariff, North American limited its liability to Brown and Williamson to $400,000 per shipment.

On April 21, 1993, North American accepted 1,108 cases of Brown and Williamson cigarettes for transportation from Macon, Georgia, to Des Plaines, Illinois. Brown and Williamson tendered the cargo under a bill of lading, which described the shipment as weighing 38,512 pounds and comprising three varieties of cigarette. North American transported the cargo to Chicago, and it left the trailer containing the cargo at a drop lot located at 900 East 103d Street on April 24. Sometime in the wee hours of April 25, an unknown person drove a stolen North American tractor into the drop lot, hitched the trailer containing the cargo to the stolen tractor, and absconded with the cargo of Brown and Williamson cigarettes. The cargo had a wholesale value of $779,-309.40, and North American's insurance carrier paid Brown and Williamson $400,000 as full satisfaction of North American's liability under the bill of lading.[3]

North American had leased the drop lot from FCLS/GM Investors Group, Inc., and GM Limited Partnership (the "lessors") on

---

1. Congress substantially reorganized and modified Title 49 in the Interstate Commerce Commission Termination Act of 1995, Pub.L. No. 104–88, 109 Stat. 803. That act amended and recodified the provision of the Carmack Amendment governing motor carrier liability relevant to this appeal at 49 U.S.C. § 14706. *Id.*, Title I, § 103, ch. 147, 109 Stat. 907. Even if the modifications were retroactive, none would be material to this appeal. We shall refer in this decision to those sections of Title 49 in force prior to the enactment of the I.C.C. Termination Act.

2. The parties stipulated to a statement of uncontested facts in conjunction with a proposed pretrial statement filed with the district court on July 5, 1995, during the pendency of the defendants' motions for summary judgment. To the extent practicable, we rely on those uncontested facts, but we view all facts and adopt all inferences in a light most favorable to the nonmoving party, here North American Van Lines, Inc., as we must in reviewing a grant of summary judgment. See *Tolentino v. Friedman*, 46 F.3d 645, 649 (7th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 2613, 132 L.Ed.2d 856 (1995).

3. The Federal Bureau of Investigation later recovered 913 of the stolen cases of cigarettes, which Brown and Williamson reclaimed and destroyed. Brown and Williamson accordingly received a refund of the taxes paid on the recovered cigarettes in the amount of $131,272.00. After this refund and North American's insurance carrier's settlement payment of $400,000, Brown and Williamson was left with an unmitigated loss totalling $248,037.40.

December 23, 1992.[4] The lessors had previously contracted with Pinkerton Security Systems, Inc., to provide security services for the drop lot as contemplated by the lease agreement. The lease agreement also required the lessors to make certain improvements to the leased premises, including the installation of an electric gate.

North American filed this diversity action under 28 U.S.C. § 1332 in the Northern District of Illinois on July 26, 1994. The complaint alleged two counts of negligence, one each against Pinkerton and the lessors, and one count of breach of contract against the lessors, and it specified damages of $400,000. Pinkerton filed a motion for summary judgment on count one of the complaint on June 13, 1995, and the lessors filed a motion for summary judgment on counts two and three of the complaint on June 20, 1995. North American filed responses to these motions on July 5.

The district court entered summary judgment in favor of all defendants on August 31, 1995. In its memorandum opinion, the district court stated that North American's complaint asserted claims for contribution against the defendants. It held that the Contribution Act barred these claims because North American had settled Brown and Williamson's claim without obtaining a release extinguishing either defendant's liability for the loss of the cigarettes. North American argued that the Carmack Amendment preempted the release requirements of the Contribution Act, but the district court disagreed and held that the Carmack Amendment did not preempt the Contribution Act.

■ In reviewing a district court's award of summary judgment, we stand in the shoes of the district court and assess the record *de novo*. *Thiele v. Norfolk & Western Ry. Co.*, 68 F.3d 179, 181 (7th Cir.1995). This plenary review of the evidence requires that we employ the standard prescribed by FED. R. CIV. P. 56(c) and determine whether the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In this determination, we are obliged to view the facts and make all inferences favorably to the nonmoving party. *Tolentino*, 46 F.3d at 649.

■ A genuine issue of material fact exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). If no such issue exists, the sole question is whether the moving party is entitled to judgment as a matter of law. We find that there are no genuine issues of material fact, and the question therefore is whether the defendants are entitled to summary judgment as a matter of law.

## II

The Carmack Amendment governs liability of a common carrier to a shipper for loss of, or damage to, an interstate shipment. At all times relevant to this dispute, the pertinent part of the statute provided as follows:

> A common carrier providing transportation or service subject to the jurisdiction of the Interstate Commerce Commission ... shall issue a receipt or bill of lading for property it receives for transportation under this subtitle. That carrier ... [is] liable to the person entitled to recover under the receipt or bill of lading. The liability imposed under this paragraph is for the actual loss or injury to the property caused by (1) the receiving carrier, (2) the delivering carrier, or (3) another carrier over whose line or route the property is transported.... Failure to issue a receipt or bill of lading does not affect the liability of a carrier....

49 U.S.C. § 11707(a) (1995). Another provision of the Carmack Amendment details the means by which carriers can negotiate for limits upon their liability under § 11707 by

---

4. The lease does not mention GM Limited Partnership, but the parties' joint statement of undisputed facts admits that GM Limited Partnership was one of the lessors in the lease transaction. We assume that FCLS/GM Investors Group, Inc., is the general partner of GM Limited Partnership.

charging lower rates of carriage. 49 U.S.C. § 10730 (1995).

Prior to the enactment of the Carmack Amendment, the liability of carriers for loss of, or damage to, interstate shipments was a matter either of common law, whether state or federal (at least until *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)), or of state positive law. *Adams Express Co.,* 226 U.S. at 504, 33 S.Ct. at 151 (citing cases). The *Adams* Court described the complexities that bedeviled shippers and carriers under the old regime:

> Some states allow[ed] carriers to exempt themselves from all or a part of the common-law liability by rule, regulation, or contract; others did not. The Federal courts sitting in the various states were following the local rule, a carrier being held liable in one court when, under the same state of facts, he would be exempt from liability in another. Hence this branch of interstate commerce was being subjected to such a diversity of legislative and judicial holding that it was practically impossible for a shipper engaged in a business that extended beyond the confines of his own state, or a carrier whose lines were extensive, to know, without considerable investigation and trouble, and even then oftentimes with but little certainty, what would be the carrier's actual responsibility as to goods delivered to it for transportation from one state to another.

226 U.S. at 505, 33 S.Ct. at 151–52. The Court recognized that the Carmack Amendment manifested Congress's intent "to take possession of the subject" and to prescribe uniform rules governing liability of carriers to shippers regarding interstate shipments. *Id.* at 506, 33 S.Ct. at 152.

■ The Carmack Amendment thus preempts all state or common law remedies available to a shipper against a carrier for loss or damage to interstate shipments. *See* U.S. CONST. art. VI, cl. 2; *Adams Express Co.,* 226 U.S. at 505–06, 33 S.Ct. at 152; *Hughes,* 829 F.2d at 1414. It codifies the common law rule that a carrier, "though not an absolute insurer, is liable for damage to goods transported by it unless it can show that the damage was caused by (a) the act of

God; (b) the public enemy; (c) the act of the shipper himself; (d) public authority; (e) or the inherent vice or nature of the goods." *Missouri Pac. R.R. Co. v. Elmore & Stahl,* 377 U.S. 134, 137, 84 S.Ct. 1142, 1144, 12 L.Ed.2d 194 (1964) (quotation marks and subsequent citations omitted).

■ It also preserves the common law rule that the parties could contract for a limitation of liability. *See* 49 U.S.C. § 10730(c) (1995) (presently codified as amended at 49 U.S.C. § 14706(c) (1996)); *see also Tokio Marine & Fire Ins. Co., Ltd. v. Amato Motors, Inc.,* 996 F.2d 874, 877 (7th Cir.1993). Under § 10730(c), a carrier could negotiate limited liability in exchange for a reduced rate of transportation. North American did, in fact, avail itself of then-sec. 10730(c) pursuant to the applicable tariff. This tariff is reproduced in the record and identified by the parties as I.C.C. NOAM 6050 Item 1009(R). It clearly states that North American's liability for loss and/or damage is limited to $400,000 per shipment. By virtue of this written agreement, North American contracted for limited liability for loss or damage to all or any part of Brown and Williamson's cargo.

The Contribution Act provides that "where 2 or more persons are subject to liability in tort arising out of the same injury to person or property ... there is a right of contribution among them, even though judgment has not been entered against any or all of them." 740 ILCS 100/2(a). A tortfeasor who has settled with the injured party and has "paid more than his pro rata share of the common liability" may recover contribution from a joint tortfeasor only if the settlement extinguishes that joint tortfeasor's liability to the injured party. 740 ILCS 100/2(b), (e). The injured party—the potential plaintiff-must have a cause of action sounding in tort against both the party seeking contribution and the party from whom contribution is sought.

■ Under Illinois law, it is sufficient for the purposes of the Contribution Act that there be potential liability sounding in tort. *Saint Paul Fire & Marine Ins. Co. v. Great Lakes Turnings, Ltd.,* 774 F.Supp. 485, 488

(N.D.Ill.1991); *Cirilo's, Inc. v. Gleeson, Sklar & Sawyers,* 154 Ill.App.3d 494, 107 Ill.Dec. 417, 419, 507 N.E.2d 81, 83 (1987). In other words, if either party's liability to the injured party is premised solely on a contract theory, there can be no contribution action as contemplated by the Contribution Act. *Jackson Nat'l Life Ins. Co. v. Gofen & Glossberg, Inc.,* 882 F.Supp. 713, 723 (N.D.Ill.1995); *New England Mut. Life Ins. Co. v. LaSalle Nat'l Bank,* 697 F.Supp. 965, 970–71 (N.D.Ill.1988); *Hennepin Drainage & Levee Dist. v. Klingner,* 187 Ill.App.3d 710, 135 Ill.Dec. 399, 401, 543 N.E.2d 967, 969 (1989).

The district court found that, as a matter of law, the Carmack Amendment did not preempt the liability release requirements of the Contribution Act because the Carmack Amendment exclusively governs the relationship between shippers and carriers and not the liability of third parties to carriers under state law contribution theories, which is how the district court characterized North American's claims for relief. The district court then determined that Brown and Williamson's claim against North American sounded in tort and, as a result, that the Contribution Act required North American to obtain a release pursuant to its settlement of Brown and Williamson's claim as a prerequisite to seeking damages either from the lessors or from Pinkerton.

The threshold issue in this case is the applicability of the Contribution Act to North American's claims for relief against the lessors and Pinkerton. If the Contribution Act does not apply, then there is no applicable state law to be preempted. *See Barnett Bank of Marion County N.A. v. Nelson,* —— U.S. ——, ——, 116 S.Ct. 1103, 1107–08, 134 L.Ed.2d 237 (1996).

### III

■ We hold that the Contribution Act does not by its own terms apply to North American's claims for relief against the defendants. North American entered into a contractual relationship with Brown and Williamson as evidenced by the transportation agreement and the bill of lading. The Carmack Amendment, which governs North American's liability to Brown and William-

son, was incorporated into the bill of lading as a matter of federal law. Therefore, North American's liability is part and parcel of its contractual relationship with Brown and Williamson.

North American's liability to Brown and Williamson arises under the bill of lading, which is a contract. *Michigan Cent. R.R. Co. v. Mark Owen & Co.,* 256 U.S. 427, 430–31, 41 S.Ct. 554, 555, 65 L.Ed. 1032 (1921). The liability scheme of the Carmack Amendment is incorporated into the terms of this contract as a matter of law. *Georgia, Florida & Alabama Ry. Co. v. Blish Milling Co.,* 241 U.S. 190, 195–96, 36 S.Ct. 541, 543–44, 60 L.Ed. 948 (1916); *Northern Pac. Ry. Co. v. Wall,* 241 U.S. 87, 91–92, 36 S.Ct. 493, 495–96, 60 L.Ed. 905 (1916). The determination of a carrier's liability to a shipper under a bill of lading covered by the Carmack Amendment is therefore a question of federal law. *Chesapeake & Ohio Ry. Co. v. Martin,* 283 U.S. 209, 213, 51 S.Ct. 453, 455, 75 L.Ed. 983 (1931); *Southern Ry. Co. v. Prescott,* 240 U.S. 632, 636, 36 S.Ct. 469, 471, 60 L.Ed. 836 (1916).

This federal law preempts Brown and Williamson's state law remedies against North American for the loss of the cargo, including those sounding in tort. Allowing such actions would be inconsistent with the Carmack Amendment's goal of a uniform rule of liability relieving shippers of the burden of determining which of the several carriers handling interstate shipments bears the blame for loss or damage under diverse state laws. *See Reider v. Thompson,* 339 U.S. 113, 119, 70 S.Ct. 499, 502, 94 L.Ed. 698 (1950); *S.C. Johnson & Son, Inc. v. Louisville & Nashville R.R. Co.,* 695 F.2d 253, 256 (7th Cir. 1982).

This is an action *ex contractu.* North American is liable to Brown and Williamson only under the terms of the bill of lading, which include the salient provisions of the Carmack Amendment, namely 49 U.S.C. §§ 10730, 11707. The district court based its contrary conclusion mainly upon its reading of *R.H. Fulton v. Chicago, Rock Island & Pacific R.R. Co.,* 481 F.2d 326 (8th Cir.), *cert.*

*denied*, 414 U.S. 1040, 94 S.Ct. 540, 38 L.Ed.2d 330 (1973).

In *Fulton*, the Eighth Circuit held that a Missouri longarm jurisdiction statute afforded *in personam* jurisdiction over a carrier named as a defendant in a lawsuit under the Carmack Amendment. The court reasoned that although the statute authorized jurisdiction over parties who committed tortious acts within the state of Missouri, it was not limited to causes of action sounding in tort but rather to any causes of action arising out of tortious acts. 481 F.2d at 332. In fact, the court expressly declined to characterize the claim for relief under the Carmack Amendment as sounding in tort for the purpose of its holding:

> Clearly then the cause of action under Carmack need not be characterized as tort to come within [the purview of the state statute] so long as it arises from the commission of a tortious act. It is true, of course, that the preemption of common law claims against carriers makes the tortious act relied on here not actionable as a common law tort....

481 F.2d at 333 (internal quotes omitted). The court went on to state *in dicta* that even if the statute were strictly limited to actions sounding in tort, "the nature of the carrier's duty under the Carmack Amendment sounds in negligence" because it involved the carrier's breach of the duty of care imposed by statute. *Id.*

We do not fully agree with this *dicta*, but it is unnecessary for us to detail our divergent view because the circumstances of the case before us do not implicate *Fulton*'s precatory discussion. There is nothing in the record to indicate—and no party has suggested—that North American is liable for breach of any duty, whether extracontractual or otherwise. Nor shall we venture an opinion on what circumstances might result in a carrier being liable under a negligence theory for a breach of a duty implied either by the Carmack Amendment or by the terms of a contract.

■ We recognize that carriers may be liable to shippers in tort for incidental harms associated with the loss or damage of cargo. *See, e.g., Mesta v. Allied Van Lines Int'l, Inc.,* 695 F.Supp. 63, 65 (D.Mass.1988) (finding that a carrier may be liable to a shipper under statute prohibiting deceptive trade practices in addition to liability under Carmack Amendment); *Sokhos v. Mayflower Transit, Inc.,* 691 F.Supp. 1578, 1581 (D.Mass.1988) (same); *Starmakers Publ. Corp. v. Acme Fast Freight, Inc.,* 615 F.Supp. 787, 791 (S.D.N.Y.1985) (stating that a bailor can recover from a bailee in tort if claim for relief does not depend upon existence of a contract). However, these cases involved a separate and independently actionable harm to the shipper as distinct from the loss of, or damage to, the goods. In *Mesta* and *Sokhos*, the harm was the carrier's failure to provide the shipper with information required by state law. In *Starmakers*, the harm was the carrier's breach of an extracontractual duty. There is no evidence in the record of an independently actionable harm suffered by Brown and Williamson other than the loss of the cigarettes.

Our holding today is consistent with the Illinois Supreme Court's seminal analysis of the Contribution Act in *Doyle v. Rhodes*, 101 Ill.2d 1, 77 Ill.Dec. 759, 461 N.E.2d 382 (1984). In *Doyle*, the third-party plaintiff sued the third party defendant, the plaintiff's employer, for contribution arising from an injury the plaintiff sustained at work. The employer argued that since the plaintiff employee's only remedy against the employer lay under the Illinois worker's compensation law, it was not liable to the employee in tort and there could be no contribution. 77 Ill. Dec. at 761, 461 N.E.2d at 384. The Illinois Supreme Court disagreed by stating that the employer would have to plead the worker's compensation act as an affirmative defense; if it waived that defense, it would in fact be liable in tort. *Id.* 77 Ill.Dec. at 765–66, 461 N.E.2d at 388–89.

■ North American's liability was premised on the Carmack Amendment, which was a part of its contract with Brown and Williamson. Brown and Williamson was foreclosed from suing in tort by the terms of the Carmack Amendment, which preempts the field formerly occupied by common law theories of liability. There was no need for North American to plead the contract as a

basis for limited liability, for the contract defined both its liability and Brown and Williamson's right to relief. Accordingly, North American was not subject to liability in tort, and the Contribution Act does not apply.

The judgment of the district court is REVERSED, and this case is REMANDED for further proceedings.